**Younes DIA, Plaintiff,**

v.

**CITY OF TOLEDO, et al., Defendants.**

**No. 3:96 CV 7187.**

United States District Court,
N.D. Ohio,
Western Division.

March 28, 1996.

Jerome Phillips, Wittenberg & Phillips, Toledo, OH, for Younes Dia.

Lawrence J. Kiroff, City of Toledo, Department of Law, Toledo, OH, for City of Toledo.

### MEMORANDUM OPINION AND ORDER

KATZ, District Judge.

This matter is before the Court on Plaintiff's motion for a temporary restraining order and Plaintiff's motion for a preliminary injunction. The Court heard oral argument on both motions on March 26, 1996. For the following reasons, Plaintiff's motions will be granted.

#### BACKGROUND

Plaintiff Younes Dia seeks to open an "adult entertainment center" providing sexually-oriented books and magazines, and nude and semi-nude dancing, in the city of Toledo, Ohio. In February, 1996, Dia applied for a Special Use Permit for his intended establishment, in accordance with Toledo Mun. Code § 1167.02 (1988). Dia's application

complied with the prerequisites set forth for adult entertainment centers in Toledo Mun. Code § 1167.01(b)(22) (1988), which permits:

... Adult bookstores, adult amusement or entertainment, including but not limited to, topless, bottomless or nude dancers ... subject to the following conditions:

A. The establishment of the above uses shall not be located within 500 feet of any residential district, school, church, park, playground or other use established specifically for the activities of minors....

B. Any of the above uses shall not be located within a 1,000 foot radius of either two other such uses....

C. Off-street parking shall be provided....

D. The location, number and type of signage shall be subject to the approval of the Plan Commission and concurrence therewith by Council.

\* \* \*

Plaintiff's application for a Special Use Permit was reviewed by the Toledo–Lucas County Plan Commission. The Commission recommended additional requirements, to which Younes consented. The Plan Commission, after public hearing, unanimously approved Plaintiff's application and forwarded it to the City Council.

Younes' application was presented for consideration by the City Council's Planning and Zoning Committee on February 21, 1996. Walter Edelen, secretary of the Plan Commission, indicated to the Committee that the application met all established criteria under the ordinance. A number of individuals from the community spoke in opposition to issuance of the permit. From the transcript of proceedings, it appears that most of the objections raised addressed anticipated deleterious secondary effects of having such an establishment in the neighborhood, such as harm to nearby businesses if evening customers ceased their patronage. The Planning and Zoning Committee voted 9–0 against recommending approval of Plaintiff's application. On February 27, 1996, the City Council voted 11–0 to deny Plaintiff's application for a Special Use Permit.

Plaintiff brought this action for a temporary restraining order and preliminary injunction requiring the City of Toledo to issue a Special Use Permit for his intended business. He alleges that Toledo Mun.Code § 1167.01(b)(22) (1988) is unconstitutional, both facially and as applied to him.

### DISCUSSION

#### A. Preliminary Injunction Standard

The granting or denial of a preliminary injunction is within the sound discretion of the trial court. *Virginian Railway Co. v. System Federation, R.E.D.*, 300 U.S. 515, 551, 57 S.Ct. 592, 601, 81 L.Ed. 789 (1937). The Sixth Circuit has set forth four standards for the District Court to use in making this determination: (1) whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits; (2) whether the plaintiff has shown that irreparable injury will result if the preliminary injunction is not granted; (3) whether the issuance of a preliminary injunction would cause substantial harm to others; and (4) whether issuing a preliminary injunction would serve the public interest. *Martin–Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 564 (6th Cir.1982). In determining whether a preliminary injunction should issue in this case, therefore, the Court addresses these four factors.

#### B. Substantial Likelihood of Success on the Merits

Plaintiff has shown that he is likely to succeed on the merits of this case. The parties have not yet had an opportunity fully to brief the issue of whether the Toledo ordinance is unconstitutional on its face or as applied to Plaintiff. Since the validity of these ordinances is determined on a case-by-case basis, *Christy v. Ann Arbor*, 824 F.2d 489, 491 (6th Cir.1987), *cert. denied*, 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988), the Court declines at this juncture Plaintiff's invitation to declare the ordinance unconstitutional. Full briefing is not necessary, however, to the Court's determination that Plaintiff is likely to succeed on one or both of his claims when the issue is finally determined.

Municipalities have broad inherent power to zone and control land use, and courts will generally uphold the exercise of such power so long as it is rationally related to legitimate state concerns and does not deprive the owner of economically viable use of his property. *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981). But the zoning power must be exercised within constitutional limits. *Id.* Where a zoning ordinance infringes on an activity protected by the First Amendment, it must be narrowly tailored to further a substantial government interest. *Id.*

The Supreme Court has held that nude dancing is "expressive conduct within the outer perimeters of the First Amendment, though ... only marginally so." *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 566, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991). Although it is protected by the First Amendment, it is entitled to less protection than is political speech or philosophical discussion. *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 70, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310 (1976).

Zoning ordinances that restrict protected First Amendment activity are analyzed under the test set forth in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). *See, e.g., Barnes,* 501 U.S. at 566–72, 111 S.Ct. at 2460–63. Under this four-part test, a regulation meets constitutional muster if it

(a) is within the constitutional power of the government; and

(b) furthers an important or substantial government interest that

(c) is unrelated to the suppression of free expression; and

(d) the incidental restriction on First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*United States v. O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679. It is clear that zoning ordinances meet the first two of these requirements; thus the test becomes whether the regulation is justified without reference to the content of the regulated speech, *i.e.,*

whether the regulation is content-neutral, *see City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 48, 106 S.Ct. 925, 929, 89 L.Ed.2d 29 (1986), and whether the regulation leaves open adequate alternative avenues of communication, *Schad,* 452 U.S. at 75–76, 101 S.Ct. at 2186.

Although a content-neutral zoning ordinance is analyzed as a "time, place, and manner" regulation, *Renton,* 475 U.S. at 47, 106 S.Ct. at 928, and the prior restraint doctrine does not apply to such ordinances, *Christy v. Randlett,* 932 F.2d 502, 504 (6th Cir.1991), the prior restraint doctrine does apply to any licensing scheme regulating an entire business that runs the risk of suppressing constitutionally protected expression, *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 225–26, 110 S.Ct. 596, 605, 107 L.Ed.2d 603 (1990). Such licensing schemes are presumptively unconstitutional and must contain two procedural safeguards designed to obviate the dangers of censorship: (1) any restraint prior to a judicial determination may only be for a specified brief time; and (2) an avenue for prompt judicial review of the censor's decision must be available. *Id.,* 493 U.S. at 229, 110 S.Ct. at 607. In addition the scheme must impose narrow and objective standards to limit the discretion of licensing officials. *Id.,* 493 U.S. at 225–26, 110 S.Ct. at 605.

Applying these tests as set forth by the Supreme Court to the facts of this case, the Court finds that Plaintiff has shown a reasonable likelihood that the Toledo ordinance must be analyzed under the stricter "prior restraint" test rather than the relatively deferential "time, place, and manner" test, and appears, therefore, presumptively unconstitutional. First, the ordinance at issue contains no express time limit within which the Council must make its determination. Where an ordinance does not contain an express time limit, the Court cannot rely on the individuals responsible for enforcing the ordinance to do so in a manner that cures it of constitutional infirmities. *Chesapeake B & M v. Harford County, Md.,* 58 F.3d 1005, 1011 (4th Cir.1995).

Second, the construction of the ordinance propounded by Defendants, and apparently used by the Council in its decisionmaking process, lacks narrow and objective standards to limit the discretion of licensing officials. Toledo Mun.Code § 1107.02 authorizes the Council to "provide conditions or restrictions upon the construction, location and operation of a special use, as shall be deemed necessary to secure the general objectives of this Zoning Ordinance...." Defendants argue that this section permits the Council to deny a Special Use Permit whenever they consider issuance of such a permit to conflict with the general objectives of the zoning ordinance. The Court finds that construction to pose an unacceptable danger to the First Amendment interests of Plaintiff and others similarly situated.

Most importantly to this case, the Court does not read Toledo Mun.Code § 1107.02 to grant the Council authority to deny an otherwise issuable permit. The language of the section allows the Council only to *condition* or *restrict* the permits it issues. The governing body may consider the secondary effects of a special use at the time the ordinance is adopted. But once the land is set aside for a special use, consideration of the same data to deny an otherwise issuable permit is not appropriate. In providing areas of the community where protected activities are permitted, the Council has agreed to issue a special use permit once an applicant meets the ordinance's prerequisites. The Court's construction of this ordinance does not lead to a presumption of facial invalidity, but it does require issuance of a permit to Plaintiff, since Plaintiff met the statutory prerequisites for a Special Use Permit.

Finally, the Court notes that the Toledo zoning ordinance as it has been applied over the past eighteen years has effectively resulted in a virtual ban on adult entertainment centers. Plaintiff has represented that the Council has never voluntarily granted a permit for an adult entertainment center under the ordinance. Defendants admit that only four or five sites in the city satisfy the ordinance's prerequisites. On these facts, it is unlikely that Defendants will be able to show

that the zoning ordinance is not a prior restraint on protected activity.

▮ Even if the Court analyzes the Toledo ordinance as a "time, place or manner" restriction, there is substantial question whether it can pass constitutional muster as applied to Plaintiff. The regulation still must leave open adequate alternative avenues of communication. In determining whether a zoning ordinance unduly restricts adult entertainment, courts rely heavily on counting the number of sites that satisfy the ordinance's requirements. The sites need not be commercially feasible. *Renton,* 475 U.S. at 53–54, 106 S.Ct. at 932; *Woodall v. City of El Paso,* 49 F.3d 1120, 1125–26 (5th Cir.), *reh'g denied,* 59 F.3d 1244 (5th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 516, 133 L.Ed.2d 425 (1995). Courts have generally found the number to be inadequate if fewer than a dozen sites, or under 1% of the city acreage, is potentially available. *See, e.g., Renton, supra, Christy v. Ann Arbor, supra; CLR Corp. v. Henline,* 702 F.2d 637 (6th Cir.1983); *Keego Harbor Co. v. City of Keego Harbor,* 657 F.2d 94 (6th Cir.1981).

The parties have not provided the Court with maps showing the number and size of potentially available sites for adult entertainment centers in Toledo. Both sides agree, however, that the number is small. The Court finds, therefore, that it is likely the ordinance will be found not to provide adequate alternative outlets for engaging in protected expression.

Accordingly, Plaintiff has demonstrated a strong likelihood that he will prevail on the merits of his constitutional claim.

*C. Irreparable Injury*

▮ Plaintiff has shown that he will suffer irreparable injury if an injunction does not issue. The violation of the right to free speech always constitutes irreparable harm, which justifies the Court in invoking its equitable powers and issuing an injunction. *See Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976).

*D. Substantial Harm to Others*

Directing the issuance of a Special Use Permit will not inflict substantial harm on other parties. No individual will be forced to patronize the establishment. The site satisfies the zoning ordinance requirements regarding distance from schools, playgrounds and other uses established for minors, so the harmful secondary effects of the establishment will be kept within bounds set by the municipality's governing body.

*E. Public Interest*

The public's interest will be served by issuing a preliminary injunction in that the public is served when constitutional rights, especially the right to free speech, are vindicated. *See Christy v. Ann Arbor, supra.*

*F. Conclusion*

Plaintiff has shown that he has a substantial likelihood of prevailing on the merits; that he will be irreparably harmed if a preliminary injunction does not issue; that issuance of a preliminary injunction will not cause substantial harm to others; and that issuance of a preliminary injunction will serve the public interest. Accordingly, the Court will issue a preliminary injunction requiring Defendants to issue Plaintiff a Special Use Permit.

### DEFENDANTS DISMISSED IN THEIR INDIVIDUAL CAPACITIES

Plaintiff brought this action against the Mayor and City Council members in their individual and official capacities. The Defendants are immune from suit in their individual capacities for performance of their official functions, and, as such, are dismissed from this action insofar as the action is brought against them in their individual capacities.

### ORDER

For the above reasons, it is ORDERED that the Defendants are hereby preliminarily enjoined from enforcing the provisions of Toledo Municipal Code § 1167.01(b)(22) against Plaintiff so as to deny the Special Use Permit applied for upon the premises located at 5801 Telegraph Road, Toledo, Ohio. It is further ORDERED that the Defendants in their official capacities are directed to issue to Plaintiff Younes Dia a Special Use Permit in the form applied for by Plaintiff and as recommended for approval by the Plan Commission. The Plaintiff shall post a bond in the amount of one hundred dollars ($100.00). This Preliminary Injunction shall be effective from the time Plaintiff posts bond until this matter may be finally determined on Plaintiff's request for a permanent injunction.

IT IS SO ORDERED.