Robert A. HARRIS, et al., Plaintiff,

v.

FITCHVILLE TOWNSHIP
TRUSTEES, et al.,
Defendant.

No. 3:99CV7789.

United States District Court,
N.D. Ohio,
Western Division.

May 15, 2000.

Reese M. Wineman, Norwalk, OH, for plaintiffs.

Joan C. Szuberla, B. Gary McBride, Spengler & Nathanson, Toledo, Daivia S. Kasper, Office of Prosecuting Attorney, Norwalk, OH, for defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

This action is before the Court on Defendants' objections to the February 25, 2000 Report and Recommendation of the United States Magistrate. In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir.1981), and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate's findings to which the Defendants object. On April 5, 2000, this Court ordered further briefing in light of *City of Erie v. Pap's A.M.*, —— U.S. ——, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). For the following reasons, Plaintiffs' motion for a preliminary injunction will be denied.

### BACKGROUND

Plaintiffs Robert Harris, Mark Potts, and James King, d/b/a Threesome Entertainment (collectively, "Threesome") seek to open an adult cabaret, or "juice bar,"

providing topless dancing in the unincorporated township of Fitchville, Ohio. The Township is unzoned and unincorporated, with no home rule power.

At some time during the fall of 1999,[1] Threesome purchased real property in Fitchville that was located (a) between 500 and 600 feet away from a private, family-oriented campground, and (b) between 500 and 600 feet away from Fitchville's only public park. Threesome proposed to build a cabaret on that site. There was strong public opposition to the proposed cabaret. At separate public meetings held on November 22, December 13, and December 27, 1999, the Fitchville Board of Trustees conducted hearings on proposed regulations for adult cabarets and other adult-oriented businesses. On the evening of December 27, 1999, the Board of Trustees adopted regulations providing, in relevant part, as follows:

(A) *Definitions*

\* \* \* \* \* \*

(6) "Adult cabaret" means a nightclub, bar, restaurant, or similar establishment in which persons appear in a state of nudity in the performance of their duties.

\* \* \* \* \* \*

(C) *Permit or license required*

\* \* \* \* \* \*

(3) No person shall engage in, conduct or carry on an adult cabaret, or permit an adult cabaret to be engaged in, conducted or carried on, in or on premises owned or controlled by him/her, without a valid, current permit issued pursuant to these regulations. A separate permit is required for each location at which an adult cabaret is operated.

\* \* \* \* \* \*

(D) *Application for permit or license*

[Procedures for obtaining a permit are set forth.]

\* \* \* \* \* \*

(F) *Action on application*

(1) The Board shall act on the application within thirty (30) days after the filing of the reports required in section (D). If the Board finds that additional information, inspections, or investigations are reasonably necessary to evaluate the application properly, it may order the applicant to file supplemental information or order supplemental inspections and investigations and postpone action on the application pending receipt of the supplemental information or reports.

(2) The application will be denied if:

\* \* \* \* \* \*

(c) The operation of . . . [an] adult cabaret or adult-oriented business at the specified premises would violate existing zoning restrictions;

\* \* \* \* \* \*

(K) *Rules governing operation of massage establishments, adult cabarets, and adult-oriented businesses*

\* \* \* \* \* \*

(8) No adult cabaret shall be established or operated on a parcel of real estate within one thousand (1,000) feet of the boundaries of any other parcel of real estate having situated on it a . . . public playground or township park, including campground, public or private.

\* \* \* \* \* \*

(O) *Severability*

If any section, subsection, or clause of these Regulations shall be deemed to be unconstitutional or otherwise invalid, the validity of the remaining sections, subsections, and clauses shall not be affected.

---

**1.** Plaintiffs have filed affidavits giving two different purchase dates for the subject property: one in September 1999 and the other in December 1999.

Those regulations became effective thirty days after the date of adoption, or on January 26, 2000. Because the site of the proposed adult cabaret was located within one thousand feet of both a campground and a township park, the site did not comply with the regulations.

Construction of the proposed cabaret apparently began in late December of 1999. On December 27, 1999, the date on which the regulations were passed, a portion of the exterior wood frame consisting of approximately thirty-four vertical poles in set concrete, and horizontal crossbeams, had been erected. No foundation or flooring had been laid. Contemporaneous photographs taken of the structure on that date are reminiscent of a rectangular horse corral.

Also on December 27, 1999, Threesome began presenting topless dance performances on the Fitchville site, in a mobile trailer, and without the necessary building permits. Threesome's apparent purpose in opening on December 27, 1999 was to be able to claim that it was already operating its cabaret at the time the Township passed the regulations governing adult cabarets. On December 28, 1999, on the advice of counsel, Threesome did not open for business. On December 29, 1999, the Richland County Building Department ordered the business closed for violation of the state building code.

That same day, Plaintiffs filed the instant suit in this Court, seeking an injunction requiring the Township to grant it a permit to operate. The case was referred to the United States Magistrate for pretrial supervision. On February 25, 2000, the Magistrate issued a Report and Recommendation that Plaintiffs be granted a preliminary injunction requiring the Township to grant the requested permit. Both parties filed objections thereto. Less than a week later, the United States Supreme Court issued a ruling in a similar case, *Erie v. Pap's A.M.*, —— U.S. ——, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000), and this Court ordered further briefing in light of that opinion. The case has now been fully briefed. The Court discusses the parties' contentions below.

## DISCUSSION

### A. Preliminary Injunction Standard

The granting or denial of a preliminary injunction is within the sound discretion of the trial court. *Virginian Railway Co. v. System Federation*, 300 U.S. 515, 551, 57 S.Ct. 592, 601, 81 L.Ed. 789 (1937). The Sixth Circuit has set forth four standards for the District Court to use in making this determination: (1) whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits; (2) whether the plaintiff has shown that irreparable injury will result if the preliminary injunction is not granted; (3) whether the issuance of a preliminary injunction would cause substantial harm to others; and (4) whether issuing a preliminary injunction would serve the public interest. *Martin–Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 564 (6th Cir.1982). In determining whether a preliminary injunction should issue in this case, therefore, the Court addresses these four factors.

### B. Substantial Likelihood of Success on the Merits

The first issue the Court must address is whether Plaintiffs have shown a strong or substantial likelihood or probability of success on the merits. Under Ohio law, the Township Board of Trustees may require the operator of an adult cabaret to comply with "any ... requirement reasonably thought necessary by the board." Ohio Rev.Code § 503.56(D). Of course, the Board of Trustees must exercise that power within constitutional limits. *See Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981). Where the challenged regulation infringes on an activity protected by the First Amendment, it must be narrowly tailored to further a substantial government interest. *See id.*

■ The Supreme Court has held that nude dancing is "expressive conduct within the outer perimeters of the First Amendment, though ... only marginally so." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991). Although it is protected by the First Amendment, it is entitled to less protection than is political speech or philosophical discussion. *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 70, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310 (1976).

■ To determine what level of scrutiny applies to the challenged regulation, the Court must decide "whether the [Township's] regulation is related to the suppression of expression. If the governmental purpose in enacting the regulation is unrelated to the suppression of expression, the regulation need only satisfy the 'less stringent' standard from [*United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968),] for evaluating restrictions on symbolic speech. If the government interest is related to the content of the expression, however, then the regulation falls outside the scope of the *O'Brien* test and must be justified under a more demanding standard." *Pap's*, —— U.S. at ——, 120 S.Ct. at 1391 (citations omitted).

■ A general prohibition on public nudity, which targets all public nudity regardless of whether that nudity is accompanied by expressive activity, is unrelated to the suppression of expression. *Id.* The ordinance at issue in this case regulates nightclubs, bars, restaurants, and similar establishments in which "persons appear in a state of nudity in the performance of their duties." Like the ordinance at issue in *Pap's*, the ordinance regulates conduct alone; it regulates all nudity by nightclub, bar, and restaurant employees, regardless of whether that nudity is accompanied by expressive activity.

■ Plaintiffs have argued that the Court should find that the ordinance at issue is subject to analysis under a more demanding standard than *O'Brien*, because the Township's motive in passing the challenged ordinance was to prevent the proposed cabaret from opening. The Supreme Court has repeatedly rejected that argument. *E.g., Pap's*, —— U.S. at ——, 120 S.Ct. at 1392, *O'Brien*, 391 U.S. at 382–83, 88 S.Ct. 1673, *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48, 106 S.Ct. 925, 929, 89 L.Ed.2d 29 (1986). Where an ordinance is "aimed at combating crime and other negative secondary effects caused by the presence of adult entertainment establishments ... and not at suppressing the erotic message conveyed by this type of nude dancing," the *O'Brien* test should be used. In this case, the records of two public hearings and testimony adduced at the hearing on Plaintiffs' motion for a preliminary injunction indicate that the Township was primarily concerned with the adverse secondary effects of having an adult cabaret located in close proximity to a campground and a playground where large numbers of children assembled. That interest is unrelated to the suppression of the erotic message conveyed by nude dancing. The ordinance regulating adult cabarets is therefore valid if it satisfies the four-factor test from *O'Brien* for evaluating restrictions on symbolic speech. Under that test, a regulation meets constitutional muster if it:

(a) is within the constitutional power of the government; and

(b) furthers an important or substantial government interest that

(c) is unrelated to the suppression of free expression; and

(d) the incidental restriction on First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*O'Brien*, 391 U.S. at 377, 88 S.Ct. at 1679; *See also Barnes*, 501 U.S. at 566–72, 111 S.Ct. at 2460–63.

■ The first question, therefore, is whether the government regulation is

within the constitutional power of the Township to enact. Plaintiffs argue that the Township acted *ultra vires* in enacting the challenged ordinance, because the Township is an unincorporated entity with no home rule power. Plaintiffs point out that Ohio state law prohibits an adult cabaret located in a township from operating within 500 feet of a public playground or township park, and places no restrictions on distances from campgrounds at all. Ohio Rev.Code § 503.53(B)(4). They argue that the Township was not authorized to increase the minimum distance from 500 feet to 1,000 feet, and to add campgrounds.

Plaintiffs' argument lacks merit. Ohio state law expressly permits a township board of trustees not only to require adult cabarets to comply with the minimum requirements of state law, but also to require cabarets to "[c]omply with any other requirement reasonably thought necessary by the board." Ohio Rev.Code § 503.56(D). A 1,000-foot distance restriction between adult cabarets and locations frequented by children is not patently unreasonable. *Cf. Renton, supra* (ordinance requiring adult cabarets to be located at least 1,000 feet from public parks not unreasonable); *N.W. Enters., Inc. v. City of Houston*, 27 F.Supp.2d 754 (S.D.Tex.1998) (same); *Steverson v. City of Vicksburg*, 900 F.Supp. 1 (S.D.Miss.1994) (same). The first factor of the *O'Brien* test is met.

■ The second question is whether the challenged regulation furthers an important or substantial government interest. As a matter of law, the Township's asserted interests in combating the harmful secondary effects associated with nude dancing are important. *Pap's*, —— U.S. at ——, 120 S.Ct. at 1395. And, contrary to Plaintiffs' suggestion, the Township need not develop a specific evidentiary record supporting its ordinance. *Id.* at 1396. It is sufficient if the Board of Trustees reasonably believes that the establishment of an adult cabaret could lead to increased crime rates and neighborhood blight, and the Township is entitled to rely on the

experience of other communities in so concluding. *Id.* The second factor of the *O'Brien* test is met.

The challenged regulation also satisfies *O'Brien's* third factor, that the government interest be unrelated to the suppression of free expression. *See Pap's*, —— U.S. at ——, 120 S.Ct. at 1397.

■ The fourth and final question is whether the regulation's incidental restriction on First Amendment freedoms is greater than is essential to the furtherance of that interest. A regulation that leaves open adequate alternative avenues of communication, such as by permitting adult uses in a reasonable number of alternate sites, satisfies this factor. *Renton*, 475 U.S. at 53–54, 106 S.Ct. at 932. A regulation also satisfies this factor if it places a *de minimis* restriction on the expressive element of nude dancing; thus, a requirement that all dancers wear pasties and G-strings leaves ample capacity to convey the dancer's erotic message. *Pap's*, —— U.S. at ——, 120 S.Ct. at 1397. In this case, the Township claims, and Plaintiffs do not dispute, that there are a number of other sites in Fitchville from which Plaintiffs could operate their business. Although the parties do not raise the issue in their arguments, it also appears that Plaintiffs could operate their business from the site they purchased, as long as their employees wore pasties and G-strings. Either alternative satisfies the fourth prong of *O'Brien*, as construed in *Pap's*.

Therefore, the Township's ordinance is a content-neutral regulation that is valid under *O'Brien*. Plaintiffs have not met the first factor of the preliminary injunction test by showing a substantial likelihood or probability of success on the merits.

Before addressing the second factor—whether Plaintiffs have shown that they will suffer irreparable injury if an injunction does not issue—the Court will address two other merits-related issues.

Plaintiffs argue, and the Magistrate agreed, that the Township's licensing scheme is constitutionally deficient because it lacks proper procedural safeguards. Any licensing scheme that runs the risk of suppressing constitutionally protected expression must contain two procedural safeguards designed to obviate the dangers of censorship: (1) any restraint prior to a judicial determination may only be for a specified brief time; and (2) an avenue for prompt judicial review of the censor's decision must be available. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 229, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990). In addition, the scheme must impose narrow and objective standards to limit the discretion of licensing officials. *Id.* at 225–26, 110 S.Ct. at 605.

This Court does not agree with Plaintiffs' contention. The regulation at issue in this case expressly provides that the Board of Trustees must grant or deny a permit within thirty days, unless "additional information, inspections, or investigations are reasonably necessary to evaluate the application properly," in which case the Board may delay its action. Thirty days is a specified, reasonably brief period of time.

Plaintiffs argue that the regulation's provision permitting the Board to delay its decision whenever "additional information, inspections, or investigations are reasonably necessary to evaluate the application properly" renders the regulation infirm, especially because it would not be feasible for the Board to conduct background checks on all employees within thirty days.

The Court disagrees. Plaintiffs' argument, if accepted, would effectively place the Township in a Catch–22 situation. An across-the-board thirty-day time limit would be infeasible because of the possible need for employee background checks. An across-the-board 120– or 180–day time limit would place the Township at a risk of violating the constitutional requirement that the Board act within a specified, *brief* period of time. The Township could reasonably have determined that a thirty-day default rule with an exception for unusual cases was the best way to address all contingencies. Furthermore, there has been no allegation that the Township might delay its decision beyond the thirty-day limit in this case; it does not take more than thirty days to determine whether the property at issue is within 1,000 feet of a park or campground. No allegation has been made in this case to support a finding that the Township is unlikely to render a determination on Plaintiffs' application within the specified, brief period of thirty days contained in the regulations.

Ohio state law provides an avenue for prompt judicial review of the Board's decision. Under Ohio Rev.Code § 503.57 and Chapter 2506, the owner may appeal an adverse decision to the Court of Common Pleas of the county in which the business is to be located.

On the facts of this case, the Court finds that the challenged regulation also meets the third requirement—that it impose narrow and objective standards to limit the discretion of licensing officials. The standard at issue in this case is plain: the proposed adult use must be located at least 1,000 feet away from parks and campgrounds. No discretion at all is required to determine whether Plaintiffs' site meets that standard.

Plaintiffs argue that the challenged regulations give Township officials too much discretion in regard to the granting or denial of adult cabaret permits. They have argued at length that this case is analogous to *Dia v. City of Toledo*, 937 F.Supp. 673 (N.D.Ohio 1996), which this Court decided four years ago. In *Dia*, the plaintiff had applied for a license to operate an adult cabaret on a site that met all established criteria under the relevant zoning ordinance, but was nonetheless denied. This Court held that the City Council had abused its discretion by denying the plaintiff's application *for an otherwise issuable permit* on the basis of impermissible con-

siderations. That is not the case at bar. In the case at bar, there is no dispute that the site in question is not eligible for a permit to operate as an adult cabaret under presently applicable regulations. The challenged regulation adequately limits the discretion of licensing officials.

 Finally, Plaintiffs have argued that the challenged regulation operates as an unconstitutional *ex post facto* law, because they were already operating the cabaret at the time the Township passed the challenged regulations. The Court disagrees. Plaintiffs can prevail on their *ex post facto* claim only if they can establish a preexisting, lawful use of the subject property as a cabaret; the fact that they may have purchased the property and engaged in preliminary work to the end of establishing the property as a cabaret is not sufficient to establish a preexisting use. Factually, it is not disputed that Plaintiffs presented a topless dance show for about two hours on the same evening the Township passed the challenged regulations, and before those regulations were passed and became effective. It also is not disputed that Plaintiffs presented that show from a mobile trailer, in violation of state building codes, and have not reopened for business since. A single, illegal topless dance show does not create a preexisting use for purposes of the *ex post facto* clause.

Plaintiffs have not shown a strong or substantial likelihood or probability that they will prevail on the merits.

## C. *Irreparable Injury*

 Plaintiffs argue that they will suffer irreparable injury if an injunction does not issue. The violation of free speech always constitutes irreparable harm, which justifies the Court in invoking its equitable powers and issuing an injunction. *See Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976).

## D. *Substantial Harm to Others*

The parties dispute whether the issuance of the requested injunction will inflict substantial harm on other parties. On the one hand, no individual will be forced to patronize the establishment. On the other hand, the chosen site violates the Township regulations regarding distance from parks, campgrounds, and other uses established for minors, so the harmful secondary effects of the establishment will be outside the bounds set by the Township's governing body. Plaintiffs argue that the alleged secondary effects of the establishment are largely speculative at this juncture. That argument misses the point. Neither side disputes that there are numerous adverse secondary effects associated with adult cabarets; Plaintiffs admitted at the hearing on their motion for a preliminary injunction that there are numerous such effects. On balance, the Court finds that issuance of an injunction permitting Plaintiffs' establishment to open could inflict substantial harm to other persons not present before the Court.

## E. *Public Interest*

The public interest factor does not weigh strongly in either direction. On the one hand, the public's interest is always served when constitutional rights, including the right to free speech, are vindicated. *See Christy v. Ann Arbor,* 824 F.2d 489 (6th Cir.1987). On the other hand, the public interest is not served by the wrongful issuance of a permit for a business that could have harmful effects in the community.

### CONCLUSION

On balance, the Court finds that a preliminary injunction should not issue. The first factor of the test—likelihood of prevailing on the merits—weighs strongly in favor of denying an injunction. The second factor—irreparable injury—favors granting an injunction, but does not come close to outweighing the first factor. The third and fourth factors do not favor

granting an injunction. Accordingly, Plaintiffs' motion for a preliminary injunction is denied.

### ADDITIONAL MATTERS

Plaintiffs brought this suit against Fitchville Board of Trustees member Paul Lortcher in both his individual and official capacities. He is immune from suit in his individual capacity for performance of his official functions. *See Dia,* 937 F.Supp. at 679. Accordingly, Plaintiffs' claims against Paul Lortcher are dismissed insofar as those claims are brought against him in his individual capacity.

IT IS SO ORDERED.