**Robert A. HARRIS, et al., Plaintiff,**

**v.**

**FITCHVILLE TOWNSHIP TRUSTEES, et al., Defendant.**

No. 3:99CV7789.

United States District Court, N.D. Ohio, Western Division.

July 13, 2001.

J. Michael Murray, Steven D. Shafron, Berkman, Gordon, Murray & DeVan, Cleveland, OH, Reese M. Wineman, Norwalk, OH, for plaintiff.

Daivia S. Kasper, Office of Prosecuting Attorney, Norwalk, OH, Gary B. McBride, Joan C. Szuberia, Spengler & Nathanson, Toldeo, OH, for defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Plaintiffs' Objections (Doc. No. 52) to the March 7, 2001, Report and Recommenda-

tion (Doc. No. 49) of the United States Magistrate Judge, in which the Magistrate recommended that this Court grant Defendants' Motion for Summary Judgment (Doc. No. 31). In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir.1981), and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate Judge's findings to which the Plaintiffs object. For the following reasons, the Magistrate's Report and Recommendation will not be adopted, the Defendants' Motion for Summary Judgment will be granted in part and denied in part, and a portion of the regulations will be found unconstitutional.

### BACKGROUND[1]

Plaintiffs Robert Harris, Mark Potts, and James King, d/b/a Threesome Entertainment (collectively, "Threesome") seek to open an adult cabaret, or "juice bar," providing topless dancing in the unincorporated township of Fitchville, Ohio. The Township is unzoned and unincorporated, with no home rule power.

At some time during the fall of 1999, Threesome purchased real property in Fitchville that was located (a) between 500 and 600 feet away from a private, family-oriented campground, and (b) between 500 and 600 feet away from Fitchville's only public park. Threesome proposed to build a cabaret on that site. There was strong public opposition to the proposed cabaret. At separate public meetings held on November 22, December 13, and December 27, 1999, the Fitchville Board of Trustees conducted hearings on proposed regulations for adult cabarets and other adult-oriented businesses. On the evening of December 27, 1999, the Board of Trustees adopted regulations providing, in relevant part, as follows:

1. The facts are taken primarily from those developed at a February 15, 2000, hearing before the Magistrate and set forth in this

(A) *Definitions*

\* \* \* \* \* \*

(6) "Adult cabaret" means a nightclub, bar, restaurant, or similar establishment in which persons appear in a state of nudity in the performance of their duties.

\* \* \* \* \* \*

(C) *Permit or license required*

\* \* \* \* \* \*

(3) No person shall engage in, conduct or carry on an adult cabaret, or permit an adult cabaret to be engaged in, conducted or carried on, in or on premises owned or controlled by him/her, without a valid, current permit issued pursuant to these regulations. A separate permit is required for each location at which an adult cabaret is operated.

\* \* \* \* \* \*

(D) *Application for permit or license*
[Procedures for obtaining a permit are set forth.]

\* \* \* \* \* \*

(F) *Action on application*

(1) The Board shall act on the application within thirty (30) days after the filing of the reports required in section (D). If the Board finds that additional information, inspections, or investigations are reasonably necessary to evaluate the application properly, it may order the applicant to file supplemental information or order supplemental inspections and investigations and postpone action on the application pending receipt of the supplemental information or reports.

(2) The application will be denied if:

\* \* \* \* \* \*

Court's decision on Plaintiffs' motion for preliminary injunction, *Harris v. Fitchville Twp. Tr.*, 99 F.Supp.2d 837 (N.D.Ohio 2000).

(c) The operation of ... [an] adult cabaret or adult-oriented business at the specified premises would violate existing zoning restrictions;

\*　　\*　　\*　　\*　　\*　　\*

(K) *Rules governing operation of massage establishments, adult cabarets, and adult-oriented businesses*

\*　　\*　　\*　　\*　　\*　　\*

(8) No adult cabaret shall be established or operated on a parcel of real estate within one thousand (1,000) feet of the boundaries of any other parcel of real estate having situated on it a ... public playground or township park, including campground, public or private.

\*　　\*　　\*　　\*　　\*　　\*

(O) *Severability*

If any section, subsection, or clause of these Regulations shall be deemed to be unconstitutional or otherwise invalid, the validity of the remaining sections, subsections, and clauses shall not be affected.

Those regulations became effective thirty days after the date of adoption, or on January 26, 2000. Because the site of the proposed adult cabaret was located within one thousand feet of both a campground and a township park, the site did not comply with the regulations.

Construction of the proposed cabaret apparently began in late December of 1999. On December 27, 1999, the date on which the regulations were passed, a portion of the exterior wood frame consisting of approximately thirty-four vertical poles in set concrete, and horizontal crossbeams, had been erected. No foundation or flooring had been laid. Contemporaneous photographs taken of the structure on that date are reminiscent of a rectangular horse corral.

Also on December 27, 1999, Threesome began presenting topless dance performances on the Fitchville site, in a mobile trailer, and without the necessary building permits. Threesome's apparent purpose in opening on December 27, 1999 was to be able to claim that it was already operating its cabaret at the time the Township passed the regulations governing adult cabarets. On December 28, 1999, on the advice of counsel, Threesome did not open for business. On December 29, 1999, the Richland County Building Department ordered the business closed for violation of the state building code.

That same day, Plaintiffs filed the instant suit in this Court, seeking an injunction requiring the Township to grant it a permit to operate. The complaint also requested declaratory relief stating that the regulations are unconstitutional as applied and on their face, damages, and attorneys' fees. The Defendants filed a counterclaim for declaratory relief stating that the regulations are constitutional. A hearing on the preliminary injunction was held before the United States Magistrate Judge on February 15, 2000, and the Magistrate subsequently issued a Report and Recommendation. On May 15, 2000, this Court issued an Opinion, *Harris v. Fitchville Twp. Tr.*, 99 F.Supp.2d 837 (N.D.Ohio 2000), denying the Plaintiff's request for a preliminary injunction and rejecting a number of arguments regarding the unconstitutionality of the regulations.[2]

The Defendants filed a motion for summary judgment, and after full briefing by the parties the United States Magistrate Judge issued a second Report and Recommendation. The Magistrate recommended that the Defendants' motion be granted, based on the "law of the case" doctrine and

---

**2.** The Opinion also dismissed Threesome's claims against Trustee Paul Lortcher in his individual capacity.

this Court's decision on the Plaintiffs' request for preliminary injunction. The Plaintiffs filed objections to the Magistrate's Report and Recommendation, in which they claim that the "law of the case" doctrine was improperly applied and proceed to repeat their arguments regarding the unconstitutionality of the regulations. The Defendants have responded to the Objections. The parties' contentions are discussed below.

### DISCUSSION

#### I. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the mate-

rial facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

#### II. Law of the Case

Threesome contends that the "law of the case" doctrine, used by the Magistrate in making her recommendation that summary judgment be granted for the Defendants, is inapplicable when based on a ruling on a preliminary injunction. Threesome is correct.

 The "law of the case" doctrine " 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' This rule of practice promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.' " *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988) (citing *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983)), *quoted in* 18 MOORE'S FEDERAL PRACTICE, § 134.20 (Matthew Bender 3d ed.2001). The Sixth Circuit has held that determinations made in the process of deciding a motion for preliminary injunction are not binding in a resolution on the merits. *See Wilcox v. United States,* 888 F.2d 1111, 1113–14 (6th Cir.1989) ("[A] trial court's

disposition of the substantive issues joined on a motion for extraordinary relief is not dispositive of those substantive issues on the merits."). Even when law of the case is applicable, it is discretionary. *See, e.g. Hegler v. Borg,* 50 F.3d 1472, 1475 (9th Cir.1995), *cert. denied,* 516 U.S. 1029, 116 S.Ct. 675, 133 L.Ed.2d 524 (1995), *cited in* 18 MOORE'S FEDERAL PRACTICE, § 134.21 (Matthew Bender 3d ed.2001).

The Defendants argue that *Wilcox* should not be applied here, because the facts of the case were well-established at the time of the ruling on the motion for preliminary injunction. This argument is without merit. Even if *Wilcox* did not apply in this instance, the Court would feel compelled to exercise its discretion to revisit the issues of this case. Having rejected application of the law of the case, the Court will proceed to the merits of the Township's motion for summary judgment.

### III. The Township's Power to Impose Segregation Requirements

The Township claims that it was empowered to enact the one thousand foot distance requirement of Section (K)(8) of the regulations pursuant to Ohio Rev.Code § 503.56(D), which requires that an adult cabaret "[c]omply with any other requirement reasonably thought necessary by the board [of trustees of a township]." Ohio Rev.Code Ann. § 503.56(D) (West 2001). Threesome disagrees. It argues that the distance an adult establishment may be located from parcels put to particular uses is expressly limited by Ohio Rev.Code § 503.53, which criminalizes establishment or operation of "an adult cabaret within five hundred feet from the boundaries of a parcel of real estate having situated on it a school, church, library, public playground, or township park." Ohio Rev.Code Ann. § 503.53(B)(4) (West 2001). Further, Plaintiffs claim that Ohio Rev.Code § 503.56(D) only applies to regulation of

existing cabarets, and may not be applied to set qualifications for proposed cabarets.

■ Both arguments proposed by Threesome are without merit. To determine if the Township's regulations conflict with ORC § 503.53(B)(4), "the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." *Village of Struthers v. Sokol,* 108 Ohio St. 263, 140 N.E. 519 (1923) (syllabus); *accord Village of Sheffield v. Rowland,* 716 N.E.2d 1121, 1123, 87 Ohio St.3d 9, 11 (1999) (quoting *Sokol* ). The Defendants argue, correctly, that while ORC § 503.53(B)(4) *prohibits* establishment or operation of a cabaret within five hundred feet of certain parcels of real estate, it by no means states that such cabarets are otherwise authorized to operate anywhere outside of the five hundred foot boundary. There is no conflict between the regulations and ORC § 503.53(B)(4).

■ Ohio Revised Code § 503.56(D) is also not susceptible to any reading that would limit its application to existing cabarets. To give it such a reading would require the Court to ignore the clear, unambiguous language of the statute, which states that a board of township trustees may impose "*any* other requirement reasonably thought necessary." Ohio Rev. Code Ann. § 503.56(D) (West 2001) (emphasis added). "If 'the statute's language is plain, the sole function of the courts is to enforce it according to its terms.'" *Chapman v. Higbee Co.,* 256 F.3d 416 (6th Cir.2001) (quoting *Vergos v. Gregg's Enters., Inc.,* 159 F.3d 989, 990 (6th Cir. 1998)). A one thousand foot restriction is not unreasonable. *Cf. City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). The Township was empowered to enact the distance restriction.

## IV. Threesome's Ex Post Facto Claim

Threesome argues that the regulations operate as an unconstitutional *ex post facto* law, because their right to use their property as a cabaret had already vested when the regulations were adopted. These rights vested, Threesome claims, because it applied for and received a permit and began construction before the regulations were adopted, and because approximately ninety-five percent of the building was completed by January 15, 2000, before the regulations became effective. Threesome bases its argument on *Gibson v. City of Oberlin*, 171 Ohio St. 1, 167 N.E.2d 651 (1960), in which the Ohio Supreme Court held:

> [W]here ... a property owner has complied with all the legislative requirements for the procurement of a building permit and his proposed structure falls within the use classification of the area in which he proposes to build it, he has a right to such permit, and there is a duty on the part of the officer charged therewith to issue it. Subsequent legislation enacted pending applicant's attempted enforcement of such right through administrative or legal channels cannot deprive him of the right. The right became vested, under the law applicable thereto, upon the filing of the application for the permit.

*Id.* at 5–6, 167 N.E.2d at 654.

Threesome's reliance on *Gibson* is misplaced. *Gibson* governs only when a building permit must be issued, not when the owner of a building must be allowed to engage in a specific use. Instead, the *Gibson* court recognized that the establishment of a nonconforming use is governed by *Smith v. Juillerat*, 161 Ohio St. 424, 119 N.E.2d 611 (1954). *See Gibson*, 171 Ohio St. at 3, 167 N.E.2d at 652. The *Juillerat* court held:

> The rule seems to be that where no substantial nonconforming use has been made of property, even though such use is contemplated, and money has been expended in preliminary work to that end, a property owner has acquired no vested right to such use and is deprived of none by the operation of a valid zoning ordinance denying the right to proceed with his intended use of the property.

*Juillerat*, 161 Ohio St. at 431, 119 N.E.2d at 615.

■ It is clear from the undisputed facts in this case that although Threesome expended funds on preliminary work and contemplated use of their site as an adult cabaret, no substantial nonconforming use of the property was made prior to the effective date of the regulations .[3] The regulations therefore did not operate as an unconstitutional *ex post facto* law.

## V. Procedural Safeguards for Protection of First Amendment Rights

■ Threesome contends that the regulations are unconstitutional in light on *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (plurality), in which the Supreme Court held that licensing schemes that risk suppressing constitutionally protected expression must contain two procedural safeguards.[4]

---

3. The December 27, 1999, construction trailer performances at the Fitchville site also do not constitute nonconforming use. To be valid, such use must be lawful, *see Matthews v. Pernell*, 64 Ohio App.3d 707, 582 N.E.2d 1075 (1990), and the parties do not dispute that the construction trailer did not comply with state building codes.

4. It is fairly well-established that "artistic dance" is a form of constitutionally protected expression. *See Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981).

"[T]he licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained, and there must be the possibility of prompt judicial review in the event that the license is erroneously denied." *FW/PBS, Inc.,* 493 U.S. at 228, 110 S.Ct. at 606. Examination of the regulations reveals that they lack both of these important safeguards.

### A. Specified and Reasonable Time for Decision

The Trustees contend that action in a specified and reasonable time is guaranteed by Section (F)(1) of the regulations, which provides:

> The Board shall act on the application within thirty (30) days after the filing of the reports required in section (E). If the Board finds that additional information, inspections, or investigations are reasonably necessary to evaluate the application properly, it may order the applicant to file supplemental information or order supplemental inspections and investigations and postpone action on the application pending receipt of the supplemental information or reports.

The reports required by section (E) include health and safely inspections and law enforcement background checks. The Trustees recognize the "speculative possibility" that action on licenses could be delayed when additional information on an application is sought, but claims that this is remedied by a number of factors, including the assurances (at the hearing on the preliminary injunction) of a member of the Huron County, Ohio, Sheriff's Department that background checks are conducted within only a few days of their request.

The Sixth Circuit has rejected the proposition that mere assurances of prompt action, without more, are sufficient to provide the necessary safeguards. *See Nightclubs, Inc. v. City of Paducah,* 202 F.3d 884, 890 n. 6 (6th Cir.2000). Furthermore, just like the ordinance discussed in *Nightclubs,* the regulations contain no mechanism for maintenance of the status quo pending review of a denial or suspension of a license. In this respect, too, the regulations fall short of the required safeguards.

### B. Prompt Judicial Review

Judicial review of a denial of a permit or renewal is provided for by Ohio Revised Code § 503.57 and Chapter 2506. Despite the Trustees' assertions to the contrary, however, there is no guarantee that review by the Huron County Court of Common Pleas would be completed promptly.[5] The Sixth Circuit recognized this in *Nightclubs:* "While we trust state courts to exercise due diligence, we cannot be sure that a state judge, who often is elected and toiling under a busy docket, will conduct a hearing and render a decision in a prompt manner." *Nightclubs, Inc.,* 202 F.3d at 892. Without a guarantee of prompt judicial review, the regulations fail to provide the second safeguard required by *FW/ PBS.*

### C. Unconstitutionality of the Permit Section of the Regulations

For failure to provide that a decision will be made in a specified time period while the status quo is maintained, and failure to guarantee prompt judicial review, the permit and license requirement of the regulations is unconstitutional as violative of the First Amendment.

---

**5.** The Trustees have submitted to the Court a copy of the Local Rules of the Huron County Court of Common Pleas, in which the schedule for expedited briefing is set forth. This is of no help to the Trustees, however, for there is no provision for an expedited decision.

## VI. Severability

The Defendants suggest that failure of one portion of the Fitchville Township regulations to satisfy constitutional requirements should not necessarily result in invalidation of the entire regulatory scheme. Section (O) of the regulations provides, "If any section, subsection, or clause of these Regulations shall be deemed to be unconstitutional or otherwise invalid, the validity of the remaining sections, subsections, and clauses shall not be affected."

▆▆ Severability in this instance is a matter of Ohio law. *See Leavitt v. Jane L.*, 518 U.S. 137, 139, 116 S.Ct. 2068, 2069, 135 L.Ed.2d 443, *quoted in J.L. Spoons v. City of Brunswick*, 18 F.Supp .2d 775, 781 (N.D.Ohio 1998). Severability requires a three-part inquiry:

(1) Are the constitutional and unconstitutional parts capable of separation so that each may read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?

*J.L. Spoons*, 18 F.Supp.2d at 781–82 (citing *State ex rel. Maurer v. Sheward*, 71 Ohio St.3d 513, 644 N.E.2d 369, 377 (1994)).

▆▆ When one separates the unconstitutional portion of the regulations (Sections (C) through (J), and Section (N)) from the constitutional portions, the remainder may be read by itself. Furthermore, the remaining portion gives effect to the apparent intent (stated in the Resolution adopting the regulations) of the Trustees to regulate the operation of adult cabarets (Section (K)) and the conduct of their employees (Section (L)) in the interest of the public health and welfare. Finally, there appears to be no need for insertion of any words or terms to give effect to the constitutional portion of the regulations. Sections (C) through (J) (inclusive) and Section (N) may therefore properly be severed from the remainder of the Fitchville regulations.

### CONCLUSION

For the foregoing reasons, the Plaintiffs' Objections (Doc. No. 52) are well-taken, and the Magistrate's Report and Recommendation (Doc. No. 49) will not be adopted. Defendants' Motion for Summary Judgment (Doc. No. 31) will be granted in part and denied in part. A declaratory judgment will issue stating that the regulations adopted on December 27, 1999, by the Fitchville Township Board of Trustees are constitutional, with the exception of those portions of the regulations involving issuance of permits and licenses, which are unconstitutional. Those portions of the regulations that are unconstitutional will be severed, and an injunction will issue preventing enforcement of the unconstitutional portions of the regulations by the Defendants against the Plaintiffs.

This cause is referred to the Magistrate Judge for continued pretrial supervision.

IT IS SO ORDERED.