EXECUTIVE ART STUDIO, INC,
d/b/a Velvet Touch, Plaintiff,

v.

CITY OF GRAND RAPIDS, Defendant.

No. 1:01–CV–196.

United States District Court,
W.D. Michigan,
Southern Division.

Oct. 9, 2001.

Allan S. Rubin, Southfield, MI, Gregory F. Lord, Sterling Heights, MI, for Plaintiff.

Daniel A. Ophoff, Grand Rapids, MI, for Defendant.

## OPINION

QUIST, District Judge.

Plaintiff, Executive Arts Studio, Inc. d/b/a Velvet Touch ("Executive Arts"), filed this action seeking declaratory and injunctive relief against Defendant, the City of Grand Rapids (the "City"). In its first amended complaint, Executive Arts alleges, among other things, that Ordinance No. 77–31, being that part of the City's Zoning Ordinance which regulates adult businesses, and Ordinance No. 01–07, which amended the definition of "adult bookstore" under the City's Zoning Ordinance, are unconstitutional both facially and as applied to Executive Arts. Now before the Court is the City's motion requesting this Court to abstain.

## Facts

Executive Arts is the lessee of commercial premises located within the City. The location is within 500 feet of a residential zone and within 1,000 feet of an "adult use" business. On October 11, 2000, Executive Arts submitted an application for a variance from that portion of the City's Zoning Ordinance which regulates adult businesses.[1] Based upon the application, Executive Arts apparently believed that it was a regulated use under the Zoning Ordinance. Executive Arts sought the variance in order to operate an adult-oriented gift and bookstore having approximately 3% of its floor space devoted to sexually-explicit magazines. After reviewing Executive Arts' variance application and obtaining an opinion from its legal department, the City's Planning Department determined that a business having only 3% of its stock in trade devoted to adult magazines, such as that proposed by Executive Arts, would not be a regulated use under the Zoning Ordinance. Following that determination, Michael Vredevoogd ("Vredevoogd"), a resident of the neighborhood located immediately north of Executive Arts' premises, and others appealed the decision to the Grand Rapids Zoning Board of Appeals ("ZBA"), seeking reversal of the Planning Department's decision that Executive Arts' proposed business would not be a regulated use. By a 5–3 vote, the ZBA upheld the determination that Executive Arts' proposed business, having only 3% of its floor space

---

1. Section 5.284(2) of the Zoning Ordinance defines an adult book store as:

 An establishment having as a substantial or significant portion of its stock in trade, books, magazines, and other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing or relating to "specified sexual activities" or "specified anatomical areas," as defined herein, or an establishment with a segment or section devoted to the sale or display of such material.
 Grand Rapids, Mich. City Code, art. 25 § 5.284(2). A variance must be obtained for a an adult book store if it is located within a five hundred-foot radius of a residential zone district or within a 1000–foot radius of two other such regulated uses. Grand Rapids, Mich. City Code, art. 25 § 5.285.

devoted to the sale/display of sexually-explicit magazines, was not an adult book store under the Zoning Ordinance. Based upon that determination, Executive Arts closed on the purchase of the building now housing its business, remodeled it, and opened for business.

On January 3, 2001, Vredevoogd filed an action in the Kent County Circuit Court seeking review of the ZBA decision. The case was assigned to Judge Dennis C. Kolenda. On February 22, 2001, Judge Kolenda issued an opinion in which he determined that a store with 3% of its floor space consisting of sexually explicit magazines would be an "adult bookstore" under the Zoning Ordinance. Judge Kolenda issued an order reversing the ZBA decision and remanding the matter to the ZBA for consideration of the original variance request, but retaining jurisdiction over the matter. Executive Arts filed an application for leave to appeal, which was denied by the Michigan Court of Appeals on June 8, 2001.

Executive Arts filed this case on March 29, 2001, pursuant to 42 U.S.C. § 1983 alleging that the Zoning Ordinance is unconstitutional and, specifically, that § 5.284 of the Zoning Ordinance is void and unenforceable because it violates the First and Fourteenth Amendments to the United States Constitution.

On May 3, 2001, the ZBA, on remand from the circuit court, denied Executive Arts' variance request. Executive Arts appealed that determination to Kent County Circuit Court. That appeal apparently remains pending at this time. Pursuant to *England v. Louisiana Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), Executive Arts also filed a notice reserving its right to litigate any federal claims in federal court. (Amended Notice of Reservation of Federal Claims/Defenses, Pl.'s Resp. Br. Ex. H.)

On June 7, 2001, the City filed the instant motion requesting that the Court abstain from hearing Executive Arts' claims pursuant to the abstention doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

On July 25, 2001, the Court heard oral argument on the City's motion. During the hearing, the City's counsel requested an opportunity to file a supplemental brief raising the issue of abstention under *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The Court indicated that it would hold the instant motion in abeyance pending receipt of additional briefs from the parties on *Pullman* abstention and rule on both abstention arguments in a single opinion. Following oral argument, the Court permitted Executive Arts to file an amended complaint which addressed some of the concerns raised by the Court during oral argument by eliminating its request that the Court declare that Executive Arts' business is not an adult book store under the City's Zoning Ordinance. In spite of its request, the City has not filed an additional brief raising *Pullman* abstention. Therefore, the Court now issues its ruling on *Younger* abstention.

### Discussion

■ Although the Supreme Court has recognized that under certain circumstances federal courts should abstain from exercising jurisdiction in deference to state proceedings, it has recognized "the heavy obligation [federal courts have] to exercise jurisdiction." *Col. River Water Conservation Dist. v. United States,* 424 U.S. 800, 820, 96 S.Ct. 1236, 1248, 47 L.Ed.2d 483 (1976). Thus, "[a]bstention from the exercise of jurisdiction is the exception, not the rule." *Id.* at 813, 96 S.Ct. at 1244.

■ In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the

State of California indicted Harris under a California law known as the California Criminal Syndicalism Act. Harris responded by filing a complaint in federal district court asking the court to enjoin the district attorney from prosecuting him on the basis that the California law inhibited Harris' exercise of his free speech and free press rights in violation of the First Amendment. The Supreme Court held that the district court should have declined to exercise its jurisdiction based upon the longstanding principle that state courts should be permitted to try state cases free from interference by federal courts. *Id.* at 43, 91 S.Ct. at 750. One reason for this rule was "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id.* at 43–44, 91 S.Ct. at 750. The Court observed that a more "vital" consideration supporting the rule is "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 44, 91 S.Ct. at 750. The Court noted that because there was already a state proceeding which afforded Harris an opportunity to raise his constitutional claims and there was no suggestion that the prosecution was brought in bad faith or that Harris faced some injury other than that incidental to every criminal proceeding, injunctive relief should be denied. *Id.* at 49, 91 S.Ct. at 753. The principles embodied in *Younger* abstention "are designed to allow the State an opportunity to 'set its own house in order' when the federal issue is already before a state

tribunal." *Ohio Bureau of Employment Servs. v. Hodory,* 431 U.S. 471, 479–80, 97 S.Ct. 1898, 1904, 52 L.Ed.2d 513 (1977).

Although *Younger* involved a state criminal proceeding, the Supreme Court has extended *Younger* to state civil enforcement proceedings and state administrative proceedings which are judicial in nature. *See, e.g., Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977)(state civil enforcement action); *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986)(state administrative proceeding). The Supreme Court has articulated the following three-pronged test for determining when *Younger* abstention is appropriate in noncriminal proceedings: (1) Are there ongoing state judicial proceedings?; (2) Do the proceedings implicate important state interests?; and (3) Is there an adequate opportunity in the state proceedings to raise constitutional challenges? *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982).

 The Court concludes that *Younger* abstention is not appropriate in this case, regardless of whether the three criteria have been met, because the pending state court case does not implicate the concerns underlying *Younger* abstention. As mentioned above, the state court case in *Younger* was a criminal prosecution which the federal plaintiff sought to enjoin through federal proceedings. Although *Younger* has been extended beyond criminal cases to civil cases, the principal consistently applied is that "federal courts should not interfere with a state's effort to enforce its own laws in an ongoing state proceeding in which the defendant can fully and fairly litigate the issue it would instead attempt to raise in federal court." *Cooper v. Bombela,* 34 F.Supp.2d 693, 696

(N.D.Ill.1999). The critical requirement for *Younger* abstention, then, is that the state must be attempting to enforce its own laws in the underlying state proceeding. In determining whether this characteristic is present in the underlying state proceeding, courts often consider the identities of the parties in the federal and state actions and whether the state proceeding was coercive, as opposed to remedial, in nature.

*Younger* abstention is generally an issue where the state is the plaintiff in the state case and the defendant in the federal proceeding and the federal plaintiff is the defendant in the state case. As the Sixth Circuit has stated, "[i]n the typical *Younger* case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings. Moreover, the basis for the federal relief claimed is generally available to the would-be federal plaintiff as a defense in the state proceedings." *Crawley v. Hamilton County Comm'rs,* 744 F.2d 28, 30 (6th Cir.1984). Thus, where the federal plaintiff also initiates the state proceeding, the basis for *Younger* abstention will usually be absent because the state is not seeking to enforce its laws. *See Lemon v. Tucker,* 664 F.Supp. 1143, 1147 (N.D.Ill.1987)(stating that "where, as here, the state is not prosecuting any of its laws, and the federal plaintiffs are not state defendants but are in fact the state plaintiffs, the *Younger* policy of non-interference with *state prosecutions* is inapplicable"). In *Crawley,* the plaintiffs, inmates at a local correctional institution, filed suit in federal court under 42 U.S.C. § 1983 challenging the conditions of their confinement under the Eighth and Fourteenth Amendments. Prior to the time the federal action was filed, inmates at the correctional institution had filed suit in state court and obtained a favorable ruling. The plaintiffs in the federal case filed their complaint while the state court case was still pending. The defendants filed a motion for abstention pursuant to *Younger,* and the district court granted it. The Sixth Circuit held that *Younger* abstention was inappropriate, stating, "[i]n [this] case, the federal plaintiffs are also *plaintiffs* in the state court action. In addition, the plaintiffs are not attempting to use the federal courts to shield them from state court enforcement efforts." *Crawley,* 744 F.2d at 30.

■ Although the federal plaintiffs in *Crawley* were also plaintiffs in the state court case, the federal plaintiff's status as a plaintiff or defendant in the state proceeding is not necessarily determinative of whether *Younger* abstention is appropriate. *Am. Elec. Power Co. v. Ky. Pub. Serv. Comm'n,* 1986 WL 16708, at *3, 787 F.2d 588 (6th Cir. March 24, 1986)(per curiam)("Formal denominations of plaintiff and defendant should not be applied mechanically"). Rather, the inquiry is whether the state proceedings arose out of state enforcement efforts, such that the plaintiff is attempting to use the federal proceedings to thwart state enforcement proceedings. *Id.* In *Kelly v. Weltman, Weinberg and Assoc. Co.,* 787 F.2d 590 (6th Cir. 1986), the plaintiff filed suit in state court alleging that Ohio's garnishment statutes were unconstitutional. The plaintiff later filed a suit in federal court under § 1983 alleging the same claim. The plaintiff's claim was essentially that his wages had been improperly garnished to satisfy his obligation on a divorce decree which he alleged was already satisfied. Distinguishing its decision in *Crawley,* the court held that *Younger* abstention applied:

> In *Crawley v. Hamilton County Com'rs,* 744 F.2d 28 (6th Cir.1984), this Court determined that when the federal plaintiff is also the plaintiff in the state action, as here, and when the federal plain-

tiff is not attempting to use the federal court as a shield from state court enforcement actions, the *Younger* doctrine is inapplicable. Here, plaintiff is arguably attempting to use the federal court, as evidenced by his request for injunctive relief, to shield him from the state courts' enforcement of the garnishment orders.

*Id.* at *1, 787 F.2d 590. *See also Kelly v. Lopeman,* No. C–3–85–930, 1989 WL 281903, at *3 (S.D.Ohio June 20, 1989)("In the case at bar, the federal Plaintiff is also the plaintiff in the state action. Further, it *cannot* be said that the federal Plaintiff 'is attempting to use the federal courts to shield ... [himself] from state court enforcement efforts' " (quoting *Crawley* )).

In this case, the federal plaintiff is the defendant in the state court action. However, the federal defendant is also a defendant in the state court action. The state court action was filed by Vredevoogd, a private party, seeking reversal of a ZBA decision that was *favorable* to Executive Arts. Courts have held that *Younger* is inapplicable where the state court action was initiated by a private party. For example, in *Harris v. Pernsley,* 755 F.2d 338 (3d Cir.1985), the Third Circuit observed, " 'where the pending state proceeding is a privately-initiated one, the state's interest in that proceeding is not strong enough to merit *Younger* abstention, for it is no greater interest in any other litigation that takes place in its courts.' " *Id.* at 344 (quoting *Williams v. Red Bank Bd. of Educ.,* 662 F.2d 1008, 1019 (3d Cir.1981)). *See also Doumani v. Casino Control Comm'n,* 614 F.Supp. 1465, 1469 (D.C.N.J. 1985)("Where, as in this case, private parties become subject to state administrative proceedings and sanctions because of the initiatives of other private parties, *Younger* does not apply."); *Shipley v. First Fed. Sav. & Loan Ass'n of Del.,* 619 F.Supp. 421, 434 (D.C.Del.1985)(concluding

that *Younger* abstention was not applicable because the underlying state action was initiated by a private litigant). The City did not initiate the state court proceeding and, in fact, it can be said that as a defendant in that case, its interest in the outcome of the ZBA appeal and the state court case was similar to Executive Arts' interest. Thus, it cannot be said that Executive Arts is attempting to use this federal lawsuit to shield itself from the City's enforcement action.

■ Another relevant consideration in determining whether *Younger* abstention is applicable to the circumstances of the particular case is whether the proceedings in the underlying state case are coercive as opposed to remedial. The coercive/remedial distinction was first drawn by the Supreme Court in *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), where it distinguished its prior decision in *Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). In *Patsy,* the Court held that a plaintiff is not required to exhaust state administrative remedies before bringing a § 1983 action in federal court. *Patsy,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982). In *Dayton Christian Schools,* the Ohio Civil Rights Commission initiated administrative proceedings against Dayton Christian Schools in response to a complaint of discrimination by an employee of Dayton Christian Schools. While the administrative proceedings were pending, Dayton Christian Schools filed a § 1983 action in federal court. The Supreme Court held that in light of the pending state administrative proceeding, the district court should have abstained under *Younger.* With regard to its ruling in *Patsy,* the Court observed:

The application of the *Younger* principle to pending state administrative proceedings is fully consistent with *Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), which holds that litigants need not exhaust their administrative remedies prior to bringing a § 1983 suit in federal court. Cf. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 607–611, 95 S.Ct. 1200, 1209–1212, 43 L.Ed.2d 482 (1975). Unlike *Patsy,* the administrative proceedings here are coercive rather than remedial, began before any substantial advancement in the federal action took place, and involve an important state interest. *Dayton Christian Schs.,* 477 U.S. at 627 n. 2, 106 S.Ct. at 2723 n. 2. Thus, "[i]n remedial state proceedings, the plaintiff is attempting in both state and federal courts to vindicate a wrong inflicted by the state; in coercive state proceedings, the federal plaintiff is the state court defendant, and the state proceedings were initiated to enforce a state law." *Remed Recovery Care Ctrs. v. Township of Worcester,* No. Civ. A. 98–1799, 1998 WL 437272, at *3 (E.D.Pa. July 30, 1998)(citing *O'Neill v. City of Philadelphia,* 32 F.3d 785, 791 n. 13 (3d Cir.1994)). *See also Kercado–Melendez v. Aponte–Roque,* 829 F.2d 255, 260 (1st Cir. 1987)("The crucial distinction between *Dayton Christian Schools* and *Patsy* is that in *Patsy* the state proceeding was an option available to the federal plaintiff on her own initiative to redress a wrong inflicted by the state. In *Dayton Christian Schools* ... the federal plaintiffs sought to enjoin a pending state proceeding which they did not initiate, but in which their presence was mandatory."); *Alleghany Corp. v. Haase,* 896 F.2d 1046, 1050, 1053 (7th Cir.1990), *cert. granted & vacated as moot,* 499 U.S. 933, 111 S.Ct. 1383, 113 L.Ed.2d 441 (1991)(stating that *Younger's* "central meaning is that a federal district court may not, save in exceptional circumstances, enjoin, at the behest of a person who has actually or arguably violated a state statute, a state court proceeding to enforce the statute against that person" and that *Younger* "is confined to cases in which the federal plaintiff had engaged in conduct actually or arguably in violation of state law, thereby exposing himself to an enforcement proceeding in state court which, once commenced, must be allowed to continue uninterrupted to conclusion"); *Green v. City of Tucson,* 255 F.3d 1086, 1102 n. 16 (9th Cir.2001)(stating that "[t]here is no tension between the non-exhaustion rule and *Younger* abstention as properly applied because, as the Supreme Court has explained, the non-exhaustion rule is applicable to state administrative proceedings that are coercive rather than remedial in nature").

In *Assisted Living Associates of Moorestown, L.L.C. v. Moorestown Township,* 996 F.Supp. 409 (D.N.J.1998), the court held that *Younger* abstention did not apply. The plaintiff in *Assisted Living* filed a state court action in which it alleged that the defendant's interpretation of a minimum acreage requirement in its zoning ordinance was contrary to law. At the same time, the plaintiff filed an action in federal district court alleging that the defendants discriminated against the handicapped under the Fair Housing Act and violated the plaintiff's constitutional rights. The court held that *Younger* abstention did not apply because the state court action was initiated by the plaintiff "to remedy what [the plaintiff] thought were erroneous or illegal actions with respect to its application [of the zoning ordinance], and was surely not a coercive, enforcement-type action instituted by the state." *Id.* at 433.

■ As noted above, the state court proceeding was initiated not by the City, but instead by a resident appealing a de-

termination by the City that was favorable to Executive Arts. Moreover, the current posture of the state case is that Executive Arts is now really in the position of being the plaintiff because it is challenging the City's denial of its variance application. Because the City is not seeking to enforce its law in the state proceeding, the underlying state proceeding is remedial in nature.

Finally, abstention is not warranted under *Younger* because the instant proceedings will not interfere with an important state interest in the state proceeding. The issue in the underlying state proceeding is whether the City's denial of the variance was proper. Here the issue is whether the City's ordinances are constitutional. Because Executive Arts' amended complaint does not seek an injunction against the state proceedings or otherwise request that this Court interfere with the state court's determination of the issues in that case, it appears that there will be no interference with the state proceeding. *See Gwynedd Props., Inc. v. Lower Gwynedd Township,* 970 F.2d 1195, 1201 (3d Cir. 1992)("where federal proceedings parallel but to do not interfere with the state proceedings, the principles of comity underlying *Younger* abstention are not implicated"); *Adams Outdoor Adver., Inc. v. Vill. of Vicksburg,* No. 4:96–CV–111, 1997 U.S. Dist. LEXIS 2552, at *15 (W.D.Mich. Feb. 3, 1997)(rejecting *Younger* abstention in zoning case where "the federal suit [did] not seek an injunction against the state proceeding and since the federal and state cases involve[d] distinct legal issues").

### Conclusion

For the foregoing reasons, the Court will deny the City's motion to abstain.

An Order consistent with this Opinion will be entered.

### ORDER

In accordance with the Opinion filed this date,

**IT IS HEREBY ORDERED** that Defendant's Motion Requesting This Court Abstain From Hearing Plaintiff's Claims (docket no. 9) is **DENIED.**