*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 04a0425p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

EXECUTIVE ARTS STUDIO, INC., d/b/a VELVET TOUCH,
  *Plaintiff-Appellee,*

  *v.*

CITY OF GRAND RAPIDS,
  *Defendant-Appellant.*

No. 02-2183

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 01-00196—Gordon J. Quist, District Judge.

Argued: June 17, 2004

Decided and Filed: December 10, 2004

Before: SILER, COLE, and ROGERS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Scott D. Bergthold, LAW OFFICE OF SCOTT D. BERGTHOLD, Chattanooga, Tennessee, for Appellant. Gregory Fisher Lord, LAW OFFICE OF GREGORY FISHER LORD, Sterling Heights, Michigan, for Appellee. **ON BRIEF:** Scott D. Bergthold, LAW OFFICE OF SCOTT D. BERGTHOLD, Chattanooga, Tennessee, Daniel A. Ophoff, Catherine M. Mish, CITY ATTORNEY'S OFFICE FOR THE CITY OF GRAND RAPIDS, Grand Rapids, Michigan, for Appellant. Gregory Fisher Lord, LAW OFFICE OF GREGORY FISHER LORD, Sterling Heights, Michigan, Allan S. Rubin, DRAPER & RUBIN PLC, Southfield, Michigan, for Appellee.

---

## OPINION

---

SILER, Circuit Judge. The City of Grand Rapids (City) appeals the district court's denial of motions to both abstain from, and subsequently dismiss, this action. The City also appeals the grant of summary judgment in favor of the plaintiffs, Executive Arts Studio, Inc., and the scope of the resulting injunctive relief. For the reasons stated hereafter, we **AFFIRM.**

## I. BACKGROUND

In August 2000, Executive Arts Studio, Inc. (Executive Arts or Velvet Touch), which operates an adult bookshop under the business name "Velvet Touch," applied to the planning department of the City for a variance from the City's zoning ordinance that regulated adult businesses. City Ordinance 77-31, adopted in 1977 as Article 25 to the existing zoning ordinance, added section 5.284(2) which defined what

constituted an adult bookstore. These stores, and certain other regulated businesses such as pool halls and pawn shops, were prohibited from establishing themselves within 1,000 feet of any two other regulated uses or within 500 feet of any area zoned for residential use. Executive Arts had lost its lease in an adjoining municipality and found a desired relocation site in Grand Rapids. However, this site was within 1,000 feet of two other regulated uses and within 500 feet of a residential area. The City had defined an adult bookstore under Article 25 of the ordinance as:

> An establishment having as a substantial or significant portion of its stock in trade, books, magazines, and other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing or relating to "specified sexual activities" or "specified anatomical areas," as defined herein, or an establishment with a segment or section devoted to the sale or display of such material.

Executive Arts represented to the City that only three percent of Velvet Touch's inventory consisted of the items specifically enumerated in the ordinance since the most significant portion of its inventory consisted of sexually explicit videos and other sexual paraphernalia. As the City had previously concluded that a "substantial or significant portion" under the statute should be defined as five percent or greater of the enumerated items within a businesses inventory, it concluded that Velvet Touch was not within the definition of an adult bookstore and therefore did not require a variance to conduct business at its chosen location. Shortly thereafter, Executive Arts purchased the building at issue and began operations.

Michael Vredevoogd, an adjacent property owner, appealed the City's decision to the Grand Rapids Zoning Board of Appeals (ZBA), which affirmed the City's conclusion in December 2000. In January 2001, Vredevoogd filed suit in Kent County Circuit Court seeking declaratory and injunctive relief. He claimed that 1) Velvet Touch was an adult bookstore; 2) its location violated the zoning code; and 3) therefore, the court should enjoin Executive Arts's operation of Velvet Touch as a nuisance per se. Treating the complaint as an appeal of the ZBA decision, the circuit court issued a decision on February 22, 2001, agreeing with Vredevoogd that Velvet Touch was an adult bookstore as defined in the ordinance. Although the court described the ordinance as a "dinosaur" because it had never been modernized since the 1970s to include more current adult entertainment staples, such as video discs and tapes, the court found that the ordinance encompassed an establishment with **either** 1) "a substantial or significant portion" of its inventory in sexually explicit reading material; and/or 2) a "segment or section" of the store exclusively devoted to such material. As Velvet Touch fell into the latter category, the court found that Velvet Touch met the definition of an adult bookstore.

However, the court determined that it was premature to rule on the remaining issues as Executive Arts was entitled to a ruling by the ZBA on the original variance request. After the ZBA developed a record and ruled upon the request, any dissatisfied party would be entitled to appeal the decision to the circuit court, which retained jurisdiction over the matter. The court also noted that "[w]hether the ordinance is invalid because it does not require that any section or segment be substantial or significant, i.e., large" was not a matter for the ZBA to decide, but for the circuit court, if a variance was denied.

A few days after the circuit court's decision, Executive Arts removed all magazines from its store and communicated that fact to the City. On February 27, 2001, the City Commission adopted Ordinance 01-07, which amended the definition of adult bookstore to include the sale, rental, trade, exchange or display of books, magazines, video tapes, video discs and other more recent additions to the adult entertainment industry's stock in trade. This ordinance became effective on March 2, 2001 as Ordinance 01-07.

On March 29, 2001, Executive Arts filed a 42 U.S.C. § 1983 claim in federal district court alleging that the original Ordinance 77-31 violated, both facially and/or as applied, the First, Fifth and Fourteenth Amendments, requesting injunctive and declaratory relief. On May 3, 2001, the ZBA denied the variance request. Executive Arts appealed this decision to the Kent County Circuit Court on May 22, 2001. On June 18, 2001, Executive Arts filed with the Kent County Circuit Court an "Amended Notice of Reservation of

Federal Claims/Defenses" stating that Executive Arts had the intention of reserving the right to raise and litigate any federal claims in federal court pursuant to *England v. Louisiana Board of Medical Examiners*, 375 U.S. 411, 421-22 (1964).

On June 7, 2001, the City filed a motion with the district court requesting that it dismiss the complaint on the basis of the *Younger* abstention doctrine due to the ongoing state litigation.[1] *Younger v. Harris*, 401 U.S. 37 (1971). Subsequently, in July 2001, Executive Arts amended its complaint to specify that it challenged both Ordinance 77-31 as a violation of the First and Fourteenth Amendments, and the newly adopted Ordinance 01-07 as violative of the First Amendment, along with a related Fourteenth Amendment due process claim for its prior non-conforming use of the property before the enactment of Ordinance 01-07. The district court denied the City's *Younger* motion on October 9, 2001, declining to abstain. *See Executive Arts Studio, Inc. v. City of Grand Rapids*, 179 F. Supp. 2d 755 (W.D. Mich. 2001).

On October 11, 2001, the Kent County Circuit Court issued an opinion finding in logical progression that 1) the amended ordinance applied to Velvet Touch; 2) Executive Arts was therefore required to seek a variance; 3) this variance was properly denied; and 4) Velvet Touch was a public nuisance under Michigan law and would have to either cease operations or remove all the material which caused it to fall into the ambit of the ordinance. The circuit court additionally addressed a federal constitutional overbreadth issue on the basis that Executive Arts raised the issue during oral argument. The circuit court considered itself bound to consider the issue once raised, and therefore, in an exercise of caution, determined a need to address all the possible federal constitutional challenges out of efficiency and the concern that by raising one constitutional issue before the circuit court, Executive Arts potentially would waive any further right to litigate the federal constitutional issues in any forum. The circuit court found against Executive Arts when it addressed these issues, stating its belief that the ordinance was constitutional.

Subsequently, Executive Arts filed a motion for summary judgment in the federal district court, while the City moved to dismiss the case based on the *Rooker-Feldman* doctrine and claim preclusion under the Full Faith and Credit Statute, 28 U.S.C. § 1738, due to the decisions in the state court. On August 29, 2002, the district court held that *Rooker-Feldman* was inapplicable and granted Executive Arts's summary judgment motion.[2] *See Executive Arts Studio, Inc. v. City of Grand Rapids*, 227 F. Supp. 2d 731 (W.D. Mich. 2002).

In ruling on the *Rooker-Feldman* issue, the district court concluded that Executive Arts had presented a valid *England* reservation of its federal claims to be pursued in federal court when litigating in the state court, particularly since the first time Executive Arts voiced its federal claims was in the federal forum. The district court found that having invoked the jurisdiction of the federal court, Executive Arts was still bound to pursue its state claims in state court. Additionally, the district court examined the statements made by Executive Arts's counsel before the Kent County Circuit Court and failed to find a valid waiver of the *England* reservation despite some comments in regard to the ordinance's being overbroad, particularly as Executive Arts's counsel clarified himself during the exchange by stating, "I think that the ordinance, in and of itself, is defective on its face. But, that's not a part of this argument. We're here on a limited appeal. This issue is appealing the Board's decision on remand."

As the evidentiary base for granting summary judgment, the district court had before it the affidavits of two expert witnesses, William Hoyt for the City and R. Bruce McLaughlin for Executive Arts. McLaughlin's study concluded that there were only six sites available to Executive Arts within the City for adult regulated uses. Hoyt found that there were eleven parcels available, after excluding four non-conforming adult sites which had been grandfathered. However, when the district court applied the distance

---

[1]The City had also raised this issue in its answer to the complaint.

[2]The court did not address the Full Faith and Credit argument, implicitly ruling against the City on the claim preclusion issue.

restrictions as written in the ordinance to Hoyt's study, rather than how the City subjectively claimed it would seek to enforce the ordinance, the district court concluded that Hoyt found that only three parcels were available. When combined with the four grandfathered sites, the district court concluded that the City claimed there were seven current sites available for adult regulated use. Given that the evidentiary difference between the parties was six sites versus seven sites out of, respectively, a total of 2546 or 2520 parcels, the district court could not discern any difference of material fact. Therefore, it found summary judgment was appropriate due to the congruence of facts between the litigants.

In ruling on the summary judgment motion, the district court found that under *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1985), and its progeny, the City had enacted the Ordinances for a proper purpose and did not have to show that Velvet Touch, in particular, would cause undesired secondary effects. However, the district court did find that the City's ordinances, when applied, failed to allow reasonable alternative avenues of communication.

The district court based this decision by examining several cases which either found that reasonable alternative avenues of communication existed, or, alternatively, did not exist, looking particularly to *Boss Capital, Inc. v. City of Casselberry*, 187 F.3d 1251, 1254 (11th Cir. 1999), for a structured template on what issues to consider. After examining several cases, the district court concluded that while no bright line rule existed on what the City was minimally required to allow, it was convinced that the number of sites permitted under the ordinance was wholly inadequate, whether calculated as a percentage of the number of parcels, acreage, or particularly if the ratio between the number of sites and the population was considered.[3] Therefore, the district court granted summary judgment and declared that Article 25 of the City of Grand Rapids's Ordinances 77-31 and 01-07 violated the First and Fourteenth Amendments as applied to Executive Arts, permanently enjoining the City and its agents from enforcing the ordinances against Executive Arts.

## II. ANALYSIS

**A. District court's exercise of authority.** As a threshold matter, this court must determine whether the district court properly reached the merits of this case. The City filed motions at the appropriate junctures requesting that the district court abstain from jurisdiction under the *Younger* doctrine, *Younger v. Harris*, 401 U.S. 37 (1971), and then requested after the state court issued an opinion that the district court dismiss the action under either the *Rooker-Feldman* doctrine, *see Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 390-91 (6th Cir. 2002), or, alternatively, claim preclusion. 28 U.S.C. § 1738. Each of these requests was predicated upon the ongoing litigation and/or decisions in the Kent County Circuit Court. As these issues are addressed in turn, it is important to recognize the manner in which this dispute began and the path it then followed through the state and federal courts.

Executive Arts initially applied for a zoning variance in order to prospectively open its business at its desired location, just as any other regulated use would need to do under the zoning code. These regulated businesses also include such establishments as pool halls and pawn shops, which are unlikely to have similar constitutional issues as Executive Arts. When Vredevoogd challenged Executive Arts's ability to locate at the site under the zoning ordinance before the ZBA, he did so as an aggrieved party against the City's interpretation of its ordinance, with the City effectively in the role as the defendant alongside Executive Arts. When Vredevoogd appealed the ZBA's decision to the circuit court and prevailed, Executive Arts immediately identified separate constitutional issues that had not been previously raised and filed suit in federal court seeking relief.

---

[3]The district court recognized the City's contention that the sites to population ratio lacked some validity without a comparison to the population's demand for such businesses. However, the court noted that the City had failed to provide any evidence that the restriction of supply was generally in accord with demand as was done in *North Avenue Novelties, Inc. v. City of Chicago*, 88 F.3d 441, 445 (7th Cir. 1996).

Until this point, Executive Arts was not conceivably defending itself against any type of state proceeding, as it simply had sought a prospective zoning variance and then had begun operations when told it did not need one. Executive Arts never abandoned its efforts to legally operate within the guidelines of the zoning regulations under Michigan law. However, upon finding itself prospectively in the defendant's role against the City, Executive Arts immediately presented its claims in federal court without raising them before any state tribunal. At the time this suit commenced in federal court, the only decision rendered by the state court, and the only issue before it, was if Article 25 of Ordinance 77-31 applied to Executive Arts. Indeed, Executive Arts filed its federal suit almost a month before its original variance request on remand was denied by the ZBA. Therefore, Executive Arts proceeded both internally within state law in asking for a lawful exception to its specific operations as provided for in the City's zoning regulations, and externally by filing a separate federal suit to challenge the constitutionality of the ordinance when Executive Arts perceived the prospect of the Ordinance being used against itself.

**1. *Younger* abstention.** The City claims that the district court should have abstained from taking jurisdiction over the case due to the *Younger* abstention doctrine. The district court's application of the *Younger* abstention doctrine is reviewed de novo. *Habich v. City of Dearborn*, 331 F.3d 524, 530 (6th Cir. 2003).

The *Younger* abstention doctrine counsels a federal court to refrain from adjudicating a matter that is properly before it in deference to ongoing state criminal proceedings. *Tindall v. Wayne County Friend of the Court*, 269 F.3d 533, 538 (6th Cir. 2001). This doctrine has been extended to include certain civil enforcement proceedings and civil proceedings uniquely involving the ability of state courts to perform their judicial functions, such as civil contempt orders or appellate bond requirements. *See New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 367-68 (1989). While certain classes of cases, particularly state criminal actions, are directly implicated by the *Younger* abstention doctrine, it remains "the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *Id*. at 368. There is "[n]o more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." *Id*. at 358 (quoting *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821)).

Due to the particular procedural circumstances in this case, it is difficult to find the exceptional circumstances which would have justified the district court's abstention. The district court agreed with the City that it facially appeared that *Younger* abstention applied, particularly in light of the three-part test used in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)("[F]*irst*, do state [proceedings] . . . constitute an ongoing state judicial proceeding; *second*, do the proceedings implicate important state interests; and *third*, is there an adequate opportunity in the state proceedings to raise constitutional challenges."). However, although the City does have a substantial interest in enforcing its zoning laws without federal interference in the state's judicial processes, the City simply was not in any type of enforcement posture against Executive Arts at the time Executive Arts filed the federal action attacking the constitutionality of the legislative enactment. Executive Arts and the City had been returned by the Kent County Circuit Court to the initial position of Executive Arts's requesting a variance with only the prospective possibility that a denial would lead to some type of future enforcement action by the City against Executive Arts. This case is not the same as *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975), where the Court first found *Younger* applicable in the civil enforcement context. In *Huffman*, ironically in a case involving the civil enforcement of a public nuisance statute against an adult movie theater, the enforcement action was ongoing when the federal plaintiff sought relief. *Id*. at 598-99. This case is far more similar to *Wooley v. Maynard*, 430 U.S. 705 (1977). There, the Supreme Court distinguished a federal plaintiff's constitutional attack upon a state car licensing law, under which the plaintiff had been convicted three times after making constitutional arguments at his state trials from which he did not appeal, from *Huffman* on the basis that the plaintiff was not seeking relief from the past state actions, but relief from the prospective enforcement of the statute. *Id*. at 709-11. Here, Executive Arts perceived the possibility of the prospective future enforcement of the zoning law against itself once the state court had declared Executive Arts to be

a regulated use under the City's zoning law, preemptively filing in federal court attacking the constitutionality of the Ordinance before any enforcement action could occur.[4]

It is true that Executive Arts's initial complaint asked for inappropriate relief that would clearly have interfered with the ongoing state judicial proceedings, particularly the request for a declaration that no variance was required and that the state court's interpretation of the zoning statute was wrong. However, the district court required Executive Arts to amend the complaint to focus upon the constitutionality of the final legislated ordinance rather than the ongoing state proceedings. Therefore, "[a]s a challenge to completed legislative action, [Executive Arts's] suit represents neither the interference with ongoing judicial proceedings against which *Younger* was directed, nor the interference with an ongoing legislative process against which [the] ripeness holding in *Prentis* was directed." *New Orleans Public Service, Inc.*, 491 U.S. at 372.

In an even murkier case for *Younger* abstention than the one presently before us, the Supreme Court stated with regard to a federal statutory challenge to an administrative body's ongoing rate-making policies that "[the constitutional challenge] is, insofar as our policies of federal comity are concerned, no different in substance from a facial challenge to an allegedly unconstitutional statute or zoning ordinance - - which we would assuredly not require to be brought in state courts." *Id.* In this case, the substantive content to which the Supreme Court referred, an allegedly unconstitutional zoning ordinance, **is** directly at issue. Therefore, while "[i]t is true, of course, that the federal court's disposition of [this] case may well affect, or for practical purposes, pre-empt, a future - - or . . . even a pending - - state-court action . . . there is no doctrine that the availability or even the pendency of state judicial proceedings excludes the federal courts." *Id.* at 373. The City has simply not explained how the district court's acceptance of jurisdiction over the constitutional issues contained within *the amended* complaint would have interfered, except as a collateral by-product, with any ongoing state judicial proceedings. Therefore the City has not shown this court why the exceptional abstention doctrine of *Younger* should be applied.

**2. *Rooker-Feldman*.** This court reviews the district court's decision on a motion to dismiss pursuant to the *Rooker-Feldman* doctrine de novo. *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003).

*Rooker-Feldman* is the name for the doctrine which holds that federal courts below the United States Supreme Court may not exercise appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are "inextricably intertwined" with issues decided in state court proceedings. *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 486-87 (1983); *Peterson Novelties, Inc.*, 305 F.3d at 390-91. This court has adopted the rationale "that a federal claim is 'inextricably intertwined' with a state court judgment and thus implicates Rooker-Feldman when 'the federal claim succeeds only to the extent that the state court wrongly decided the issues before it[.]'" *Peterson Novelties, Inc.*, 305 F.3d at 393 (citations omitted).

In this case, the issues resolved in the Kent County Circuit Court opinion of October 11, 2001, which were decided, i.e., those involving the internal application of Michigan law to the City's zoning ordinances and the denial of a variance from those regulations, could not be considered error by the federal suit's success. It is possible to rule that the ordinance is unconstitutional without calling into question the district court's decisions that 1) the ordinance applied to Executive Arts; 2) therefore Velvet Touch was a regulated use under the zoning law; and 3) the zoning board properly denied a variance under the zoning code and Michigan law. Thus, no appellate jurisdiction over a state court decision is present and the federal claims

---

[4]We do not consider this case to be one in which a private party has initiated a state administrative or judicial enforcement action prior to the bringing of a federal suit by the regulated party, and we therefore need not reach the issue of whether *Younger* would apply in such a situation. While Vredevoogd's state court complaint could be construed as a private enforcement action, we accept the state court's treatment of his initial appeal as an appeal from the BZA's determination that Executive Arts was not required to seek a zoning variance. Thus for *Younger* purposes, when Executive Arts brought suit in federal court, it was not defending itself in an enforcement proceeding brought by a private party or by the city.

are not "inextricably intertwined" with the state court judgment on the issues that were litigated before the Kent County Circuit Court.

Particularly instructive on this issue is *Hood v. Keller*, 341 F.3d 593 (6th Cir. 2003). James Hood was a pastor who challenged the constitutionality of an Ohio statute which required a permit to use the statehouse grounds. The pastor had entered these grounds to preach and/or hand out religious tracts, for which he was subsequently convicted of criminal trespass. *Id*. at 596. At his state criminal trial, Hood raised the defense that the statute violated his First and Fourteenth Amendment rights. The Ohio court found against him on the constitutionality issue and Hood was convicted. Subsequently, Hood filed in federal district court claiming that the statute was unconstitutional and requested an injunction enjoining the state and its agents from enforcing the statute against himself. The district court dismissed Hood's federal action on the basis of the *Rooker-Feldman* doctrine due to the prior rulings in the criminal proceedings. This court reversed.

In reversing, this court found that *Rooker-Feldman* is not applicable where:

> the plaintiff's claim is merely "a general challenge to the constitutionality of the state law applied in the state action," rather than a challenge to the law's application in a particular state case. In determining the applicability of the *Rooker-Feldman* doctrine, federal courts "cannot simply compare the *issues* involved in the state-court proceeding to those raised in the federal-court plaintiff's complaint," but instead "must pay close attention to the *relief* sought by the federal-court plaintiff."

*Id*. at 597 (citations omitted)(emphasis in original).

Since Hood was not requesting that the federal court review his conviction, but was asking the court to assure that he would no longer be subjected to the law's unconstitutional effects, *Rooker-Feldman* was inapplicable. Here, Executive Arts began litigating a challenge to the constitutionality of the ordinance in federal court while still seeking a variance under the ordinance before the ZBA. Such a posture is more likely to implicate *Younger* abstention, which has already been addressed, rather than *Rooker-Feldman*. However, without regard to the outcome of the particular variance request for Executive Arts's chosen locale, Executive Arts was still subject to the ordinance citywide when it filed this suit. Just as Hood sought relief so that he could continue his protected First Amendment activity without state interference no matter what the prior specific decision in his case was, Executive Arts asked the district court for prospective relief from the ordinance so that it could continue its activities unobstructed in the City, without regard to the specific location.

Even if the constitutional issue in the specific application was decided in state court, *Hood* makes clear that it would not foreclose Executive Arts's general constitutional attack. If Executive Arts had been forced to displace due to some unforseen occurrence outside the specific application of the zoning law in the case before the state court, it would still have been subjected to the ordinance in trying to locate anywhere throughout the City. The application of the zoning law in state court for the particular locale where Executive Arts currently conducts business, and the general challenge to the constitutionality of the ordinance, are therefore distinct issues and not "inextricably intertwined" with the state court decisions on the specific application of the ordinance. The Kent County Circuit Court ably recognized this in its own opinion when it felt bound to reach over from the application of the City's regulations and Michigan law to additionally address the wholly separate constitutional issues.[5]

---

[5]Once again, the original complaint inappropriately requested that the district court declare that Velvet Touch was not an adult bookstore as defined in the ordinance and that the court should declare that Executive Arts was not required to obtain a variance under the zoning law, which were both issues of state law decided by the Kent County Circuit Court. Such a request squarely implicates *Rooker-Feldman* as it is a direct attack on the issues decided by the state court. *See Pieper v. American Arbitration Assoc., Inc.*, 336 F.3d 458, 460-61 (6th Cir. 2003). However, the district court required Executive Arts to amend the

> The Rooker-Feldman doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

*Id*. at 599 (quoting *Gash Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

Executive Arts's request for relief is an independent claim, although the federal court may ultimately deny the legal conclusions reached in the state court. Therefore, *Rooker-Feldman* is not a bar to jurisdiction.

**3. Claim preclusion.** As indicated in *Hood*, *Rooker-Feldman* and claim preclusion are distinct concepts. *Id*. Under 28 U.S.C. § 1738, federal courts are required to give the judgments of state courts the same preclusive effect as they are entitled to under the laws of the state rendering the decision, which includes § 1983 actions vindicating constitutional rights. *Miagra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 85 (1984).

"The preclusive effect of a state court judgment is determined by that state's law." *Peterson Novelties, Inc.*, 305 F.3d at 394. In Michigan, claim preclusion "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004). Michigan broadly construes the doctrine of claim preclusion. *Id*. However, with regard to the second requirement, there is little chance that privity could be found in the first action between Vredevoogd and the City as their interests were opposed at that point, while those of the City and Executive Arts were aligned.

As recently as two years ago, it was noted that it is not clear that Michigan permits non-mutual claim preclusion. *Peterson Novelties, Inc.*, 305 F.3d at 395. However, until the Michigan Supreme Court speaks definitively upon the matter, "[Michigan] recognize[s] that for res judicata to apply, both actions must involve the same parties or their privies. 'The same parties' means adversarial parties. Generally, codefendants are not adversaries for the purposes of res judicata, even though a codefendant could have filed a cross-claim against the other defendant." *Eyde v. Charter Township of Meridian*, 324 N.W.2d 775, 778-79 (Mich. Ct. App. 1982). "Adverse parties have been defined as those who, by the pleadings, are arrayed on opposite sides. Opposite sides in this sense is not restricted to the plaintiffs against the defendants, since codefendants having a controversy *inter se* may come within such a classification." *Gomber v. Dutch Maid Dairy Farms, Inc.*, 202 N.W.2d 566, 570 (Mich. Ct. App. 1972). Here, the City and Executive Arts did not have any controversy between themselves when the first decision was rendered before the district court took up jurisdiction of the constitutional issues in the federal case. Therefore, there can be no claim preclusion.[6]

**B. Constitutionality of Ordinance 77-31 and 01-07.** Having determined that jurisdiction over this case was properly taken by the district court, we now turn to the merits of the underlying dispute between the City and Executive Arts, over which the district court granted summary judgment to Executive Arts. The district court's grant of summary judgment is reviewed de novo, using the same standards employed by the

---

complaint, adroitly confining itself to jurisdiction over the constitutional issues, which collaterally could impact the state court's decisions, rather than entertaining any reinterpretation or application of the City's regulations in light of the Constitution, which Executive Arts requested in the first complaint. *See Executive Arts Studio, Inc. v. City of Grand Rapids*, 179 F. Supp. 2d 755, 757 (W.D. Mich. 2001).

[6] Due to the district court's limitation of the action solely to the constitutionality of the Ordinance, it is highly unlikely that this court would be bound by claim preclusion from addressing the constitutionality of the *prospective* future enforcement of the Ordinance. *See* discussion *supra* of *Wooley v. Maynard*, 430 U.S. 705 (1977)*; Hood v. Keller*, 341 F.3d 593 (6th Cir. 2003).

district court, but viewing all the factual evidence and drawing all reasonable inferences in favor of the non-moving party. *United States v. Miami Univ.*, 294 F.3d 797, 805 (6th Cir. 2002). "Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.*

     **1. Facial challenge.** Both parties agree that Ordinance 77-31, its amendment, and the zoning regulations as originally enacted were modeled upon those found to be constitutionally permissible in *Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976). In *Young*, the Supreme Court found that governments can use zoning law consistent with the First Amendment to ameliorate the secondary effects of adult establishments in order "to prevent crime, protect the city's retail trade, maintain property values, and generally 'protec[t] and preserv[e] the quality of [the city's] neighborhoods, commercial districts, and the quality of urban life,' [but] not to suppress the expression of unpopular views." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986). If the zoning ordinance is designed "to serve a substantial governmental interest and allows for reasonable alternative avenues of communication" then there are no First Amendment issues in trying to control the secondary effects through zoning. *Id.* at 52. However, the ordinance must still be narrowly tailored "to affect only that category of [establishments] shown to produce the unwanted secondary effects." *Id.* at 52.

     Here, the City facially had a proper known, and constitutionally pre-approved, substantial governmental interest in controlling the secondary effects from those types of establishments, including adult bookstores, which were enumerated by the City in the zoning regulations. Additionally, although this ordinance fails to provide for reasonable alternative avenues of communication when actually applied as shall be discussed *infra*, facially, the restrictions in the ordinance have already been upheld by the Supreme Court, albeit in the much larger urban metropolis of Detroit. However, a facial challenge to the constitutionality of the "segment or section" language as used in Michigan does have some validity.

     Governments are not required to produce their own studies and may rely upon the experience of other cities in designing their ordinances, even if those ordinances differ in substantial respect. *Id.* at 51. However, since the ordinance as interpreted by the state court encompasses multiple establishments which would never be defined as adult bookstores in everyday English, such as a Walden's or Borders which carry "a section or segment" of adult reading material, it would have been appropriate for the City to have produced some type of evidence of secondary effects from these establishments. Yet the City has cited no basis, study or third party experience that would lead one to believe that such a broad ordinance is needed to control undesirable blight rather than merely being an attempt to control undesired speech. This ordinance is simply not narrowly tailored when its language sweeps up mainstream bookstores, as it is then evident that the ordinance is controlling the dissemination of objectionable reading material rather than the effects upon a neighborhood from the businesses that disseminate and specialize in such material.

     **2. As applied.** However, even if we were able to find that the "ordinance is 'narrowly tailored' to affect only that category of [establishments] shown to produce the unwanted secondary effects, thus avoiding the flaw that proved fatal to the regulations in *Schad v. Borough of Mount Ephraim*, 452 U.S. 61 (1981)," *Renton*, 475 U.S. at 52, it appears evident that the ordinance is fatally flawed when applied. While the district court expressed some reservations about finding an ordinance unconstitutional that was modeled upon one already upheld by the Supreme Court, it must be remembered that the Detroit ordinance in *Young v. American Mini-Theaters, Inc.* "burdened free speech only slightly because of the 'myriad of locations' in the City available for such use." *CLR Corp. v. Henline*, 702 F.2d 637, 638 (6th Cir. 1983). "Although both the Supreme Court's decisions on this issue have held [ ] zoning ordinances to be constitutional, the Sixth Circuit has made it clear that each case must be decided according to its specific facts." *Christy v. City of Ann Arbor*, 824 F.2d 489, 491 (6th Cir. 1987). "The [Supreme] Court [has] noted that the 'situation would be quite different if [an] ordinance had the effect of suppressing, or greatly restricting access to, lawful speech.'" *Id.* at 491 (quoting *Young*, 427 U.S. at 71 n.35). "The Renton ordinance was upheld

because the evidence demonstrated . . . that the city had left open 5 percent (520 acres) of its land for the use of adult businesses." *Id*.

By contrast, Executive Arts has appropriately brought this challenge to the ordinance due to the harm that it suffers through the severe limitation upon the number of sites Executive Arts is permitted to carry on its First Amendment protected activities within the City. Without regard to any right Executive Arts might conceivably possess in the business site currently at issue, it is undisputed that Executive Arts is currently foreclosed from opening its store in all but around a half dozen possible sites in a City with over 2,500 parcels of commercially useable real estate.[7] This is wholly inadequate to provide for reasonable alternative avenues of communication. *See Renton*, 475 U.S. at 53 ("the ordinance leaves some 520 acres, or more than five percent of the entire land area of Renton, open to use as [ ] adult sites"); *CLR Corp.*, 702 F.2d at 639 (unconstitutional zoning ordinance only permitted two to four restricted uses in a 2500 foot frontage area for a city of 70,000); *Dia v.City of Toledo*, 937 F. Supp. 673, 678 (N.D. Ohio 1996)("Courts have generally found the number to be inadequate if fewer than a dozen sites, or under 1% of the city acreage, is potentially available").

Therefore, when this ordinance is applied to Executive Arts's situation, it is evident that it fails constitutional scrutiny. This can generally only be perceived when Executive Arts sought a site for its business, for absent the additional regulated activities from which Executive Arts must maintain a distance, along with the increased number of these establishments due to the broad use of "segment or section" in the ordinance, it would appear that sufficient sites would potentially be available. There is no doubt that the City enacted these ordinances in the absolute good faith belief that they were proper acts to address the secondary effects of adult establishments like Executive Arts. However, when a valid constitutional ordinance from a city the size of Detroit is applied to these facts in a city the size of Grand Rapids, the unconstitutional result of severely limiting the number of these adult establishments rather than controlling their effects through dispersal occurs. Detroit's ordinance "did not affect the number of adult [establishments] that could operate in the city; it merely dispersed them." *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 72 (1981). Grand Rapids zoning Ordinances 77-31 and 01-07, as applied, not only disperse adult bookstores, but severely limit their number.

**C. Overbreadth of the injunctive relief.** The City claims that if the original and amended Article 25 of the zoning regulations, which define an adult bookstore, are unconstitutional, the district court should have limited itself to striking down only the "segment or section" language in the definition as the constitutionally offending portion, leaving intact the rest of the adult bookstore definition. When reviewing the decision of a district court to grant or to deny a request for the issuance of a permanent injunction, the scope of injunctive relief is reviewed for an abuse of discretion. *Secretary of Labor v. 3RE.Com, Inc.*, 317 F.3d 534, 537 (6th Cir. 2003).

The City is correct that a federal court must "never formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Brockett v. Spokane Arcades*, 472 U.S. 491, 501 (1985). In *Brockett*, a plaintiff claimed that an obscenity statute was overbroad as it defined "prurient interest" to include an incitement to "lasciviousness or lust." *Id*. at 494. The plaintiff claimed that "lust" included normal sexual interest, and therefore the statute was constitutionally overbroad, to which the lower court agreed in granting an injunction against the enforcement of the statute. *Id*. at 494. However, the Supreme Court reversed the injunction since the remedy itself was too broad. The Supreme Court held that even if a proper narrowing construction could not be given to the word "lust," the lower court should have excised the offending word alone since the statute as a whole was constitutional. *Id*. at 504-05.

---

[7]Like the district court, we find that quibbling over single-digit differences in site counts between the parties is an immaterial factual difference.

One difficulty in agreeing with the City is that it is not clear, at least enough to overcome an abuse of discretion standard, that the "segment or section" language of the ordinance is the facially defective unconstitutional component of the zoning regulations, like the incitement to "lust" language in *Brockett*'s obscenity statute. We have affirmed the challenge to the ordinance for failing to be narrowly tailored as the City produced no evidence that such a broad definition of adult bookstores was needed in order to control adverse secondary effects, and this broad definition then led to a severe limitation on the number of adult bookstores when applied to Executive Arts. It is conceivable that the City potentially could have chosen to broadly define adult bookstores, but then permitted these broadly defined establishments over a far greater range of the City by loosening restrictions in other areas of the zoning code. Whether the City in narrowly tailoring its ordinance desires to tighten the definition of adult bookstores, or loosen the restrictions upon their location, is a matter within the purview of the City.[8] The district court should not be in the position of making that choice. We therefore cannot find that the district court abused its discretion in enjoining the entire definition of an adult bookstore in the two ordinances rather than excising a small segment of it.

## III.  CONCLUSION

As Article 25 of the City of Grand Rapids Ordinances 77-31 and 01-07 fails to narrowly tailor the definition of adult bookstore, leading to the unconstitutional restriction on the ability of Executive Arts to disseminate its First Amendment protected material, the district court is **AFFIRMED**.

---

[8]The City has since made its preference known in a third revision of the ordinance by a significant change in the definition of adult bookstore which strikes out the "segment or section" language and increases the amount of inventory which triggers regulation, thus tightening the adult bookstore definition.